**COMMERCE BANK, N.A.,
et al., Plaintiffs,**

v.

**OGDEN, NEWELL, AND WELCH,
et al., Defendants.**

**No. 94–51–CIV–J–16 A.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Jan. 8, 1999.

J. Thomas Cardwell, Denise D. Dell, Akerman, Senterfitt & Eidson, P.A., Orlando, FL, for Plaintiffs.

Andrew Seiden, Seiden, Alder, Rothman, Petosa & Matthewmann, P.A., Boca Raton, FL, for Defendants.

### *ORDER*

JOHN H. MOORE, II, District Judge.

This case is before the Court on Defendants' *Motion for Partial Summary Judgment with Regard to Count VIII of the Plaintiffs' Second Amended Complaint, and, Specifically, Plaintiffs' Claim for Punitive Damages and Memorandum of Law in Support Thereof* (Doc. # 257), Defendants' *Motion for Partial Summary Judgment with Regard to Count I through VII and IX of Plaintiff's Second Amended Complaint and Memorandum of Law in Support* (Doc. # 260) and Plaintiffs' *Motion for Partial Final Summary Judgment* (Doc. # 283).

## I. Background

Like a good novel, this case revolves around a document that is considered ancient by the Federal Rules of Evidence. In 1960, H. Boone Porter, the founder of Porter Paints, met with Cecil Bailey of the Rogers, Towers and Bailey law firm in Jacksonville, Florida. The result of that and other discussions was the production of both a will and a deed of trust for H. Boone. The deed of trust was designed to create a "double generation skipping trust" which would benefit Porter during his lifetime, his wife and then his son (the Reverend Porter), Reverend Porter's children and then finally, their children.

The generation skipping trust, obviously, provided great tax advantage to H. Boone. By creating and using the trust, the corpus of the trust would be taxed at his death but then would not be taxed again until his great-grandchildren died. This provided the benefit of the trust to the family for several generations without the reductive impairment that would occur if the corpus were taxed at each transfer between generations.

The key to the preparation of the deed of trust was compliance with the laws, rules, regulations and codes of the United States internal revenue laws. On July 11, 1960, Bailey wrote to H. Boone forwarding a proposed draft of the will and the deed of trust. After receiving Bailey's letters, H. Boone sent a copy of the papers to Squire Ogden of the Ogden, Newell & Welch law firm in Kentucky. Squire Ogden was the attorney for H. Boone's paint company and, according to letters filed with the complaint, the attorney which Porter trusted. Squire Ogden reviewed the drafts sent to him and made comments about the instruments, which Ogden forwarded to H. Boone, which H. Boone subsequently sent to Bailey who made the changes suggested by Ogden. One of the changes made in the instrument created a provision allowing Reverend Porter to assume a co-trustee position with the corporate trustee (a bank trust section). Furthermore, at some point during the transmission of those papers, paragraph 8 of the deed of trust came to state the following:

8. The Trustee is authorized to pay, out of principal of the trust property, to or for the benefit of any beneficiary who at the time is entitled to receive income from the trust property, hospital, nursing, and medical expense of any such beneficiary, and also such amounts as may be considered advisable for the maintenance, support and welfare of any such beneficiary; but the amount or amounts of any such payments shall be determined by the Trustee in its sole discretion.

The Plaintiffs now complain the inclusion of the word "welfare" in the above paragraph has caused the purposes of the trust to fail. That is, the Plaintiffs complain the inclusion of the word welfare will yield a taxable event at the death of Reverend Porter.

 Under the current tax law (although there is some dispute), the key to non-taxability of the corpus is the corpus must not be attributable to the beneficiary's estate. The current tax laws provide for non-taxability of the corpus to the beneficiary when the beneficiary has no, or very limited control, over it. That is, the tax laws provide that those things which shall be included in a decedent's estate include items over which the decedent has a general power of appointment. Trusts which have a general power of appointment provision exercisable by the beneficiary/decedent are, therefore, included in the death estate, i.e. taxable. Section 2514 of the Internal Revenue Code provides that:

A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent shall not be deemed a general power of appointment.

The Internal Revenue Service has interpreted and promulgated a rule which interprets this section as providing an allowance for limited powers of appointment. In other words, limited powers of appointment, those limited by an ascertainable standard, will not yield a general power of appointment in the beneficiary/decedent. As such, limited powers of appointment will not yield inclusion of the trust corpus in the estate of the decedent/beneficiary. However, "[a] power to use property for the comfort, welfare or happiness of the holder of the power is not limited by the requisite standard." Treasury Regulation § 20.2041–1(c)(2). Thus, a provision in a trust instrument which allows for the paying out of the corpus to the beneficiary for his or her welfare is not limited and is treated as a general power of appointment.

The crux of the case at bar is simply that the Plaintiffs believe, upon the death of Reverend Porter, that the trust corpus will be included in his estate for tax purposes. The trust is alleged to be worth about 19 million dollars. The Plaintiffs argue that the inclusion of the word "welfare" and several other incidents described below were the result of professional malpractice and that the failure of Squire Ogden and the Ogden–Newell firm to notify Reverend Porter of this resulted in a breach of fiduciary duty. The Plaintiffs complain the subsequent described events are also professional malpractice and breach of fiduciary duty.

The Plaintiffs include also claims of professional malpractice for several events that occurred subsequent to the original signing and establishment of the trust. Specifically, the Plaintiffs complain Squire Ogden prepared a will for Reverend Porter which also created a trust substantially similar to the trust created for H. Boone. Further, the Reverend's trust instrument created a clause which allowed it to be incorporated into the trust created by H. Boone.

Plaintiffs also argue that in 1965 Squire Ogden drafted an instrument for H. Boone called a Clifford Trust which affected certain aspects of the 1960 deed of trust. The Plaintiffs argue at the time the Clifford Trust was drafted Squire Ogden should have detected the welfare issue in the 1960 deed of trust and taken steps to correct it. The Clifford Trust was designed to benefit the Reverend and his children.

The Plaintiffs next complain that Squire Ogden provided advice to H. Boone in 1966 concerning tax issues relating to the prepayment of estate taxes. Plaintiffs assert at that time Squire Ogden should have again detected the welfare word issue in the deed of trust. They argue this failure to detect again constituted malpractice.

The Plaintiffs next argue that Squire Ogden advised H. Boone in 1968 about his estate plan and the addition of an amendment to it and the 1960 deed of trust. The amendment allowed the Corporate Trustee of the Trust to not be incorporated under Florida corporate law. Again, the Plaintiffs complain of malpractice and breach of fiduciary duty.

Furthermore, the Plaintiffs complain when the Ogden–Newell firm handled the probating of H. Boone's estate in 1969, the Firm should have then detected the welfare word issue in the trust instrument. Furthermore, the Plaintiffs complain that the Ogden–Newell firm should have advised the Reverend to disclaim his power of appointment relating to the trust.

Finally, the Plaintiffs complain that in 1971 the estate tax return for the deceased H. Boone was audited and the Ogden–Newell law firm represented the estate in that audit. The Plaintiffs argue that the welfare issue should have been detected at that time, too. Shortly after the audit, the Ogden–Newell firm represented the Reverend in a removal proceeding which replaced the corporate trustee of the trust.

In 1990 the Reverend became aware of the welfare word issue. He was informed that the current state of the federal tax law would, to some extent, examine state law to determine how the word "welfare"

was treated under state law. The attorneys he engaged informed him that the area of the law was unsettled in Florida. At that time the Reverend caused the Florida Legislature to be lobbied and the law of Florida to be changed. The law was changed so that the inclusion of the word "welfare" in a Florida trust instrument did not give the trustee the ability to do more than disperse limited amounts of the corpus and thereby comply with the limiting requirements of the internal revenue laws.

Subsequent to the change in Florida law, the Reverend hired the D.C. law firm of Miller and Chevalier to request a private letter ruling from the Internal Revenue Service. The I.R.S. was given the facts of the case at bar, including the changes in the Florida law, and requested to provide their opinion. The I.R.S., on the facts presented, stated that they would not find the trust to be a part of the Reverend's estate. However, the Plaintiffs state in their Second Amended Complaint:

> 97. Notwithstanding the extraordinary mitigation efforts undertaken by Plaintiffs, the ultimate issue of whether the Trust's assets are includable in the Reverend Porter's taxable estate pursuant to Section 2041 of the I.R.C. is dependant upon the rules of law presently embodied in Florida Statutes, Section 737.402(4) remaining in full force, and applying in full measure, with respect to the 1960 Deed of Trust. However, Florida Statutes, Section 737.402(4) has not been authoritatively construed in a reported decision by a Florida state appellate court, and remains subject to amendment or repeal by the Florida Legislature. Hence, the Plaintiffs will not be free from the risk of an unnecessary tax loss until after the Reverend Porter's death.... Consequently, the ultimate tax consequences to the Trust under section 2041 of the I.R.C. arising from the Defendants' professional malpractice and other wrongful conduct

may not be determined for another sixteen (16) years or longer.

Based on these assertions, the Plaintiffs argue that they are entitled to relief for: 1) the Ogden–Newell firm's negligence, professional malpractice and breach of fiduciary duty regarding the 1960 deed of trust; 2) the Ogden–Newell firm's negligence, professional malpractice and breach of fiduciary duty in not detecting the welfare word issue when drafting the 1965 will and Clifford Trust; 3) the Ogden–Newell firm's negligence, professional malpractice and breach of fiduciary duty regarding the advice given about H. Boone's pre-payment of estate taxes; 4) the Ogden–Newell firm's negligence, professional malpractice and breach of fiduciary duty in not detecting the issue during the 1968 review and amendment of the Deed of Trust; 5) the Ogden–Newell firm's negligence, professional malpractice and breach of fiduciary duty in failing to advise the Reverend to disclaim the power of appointment at the time of the probating of H. Boone's will; 6) the Ogden–Newell firm's negligence, professional malpractice and breach of fiduciary duty in failing to detect the welfare word issue at the time of the 1971 tax audit; 7) the Ogden–Newell firm's negligence, professional malpractice and breach of fiduciary duty in failing to detect the welfare word issue during the removal of the corporate trustee; 8) the Ogden–Newell firm's gross negligence and reckless disregard for the rights of the Porter Family; and, 9) declaratory judgment determining the defendants' obligations to indemnify the Plaintiffs for future damages.

## II. Summary Judgment Standard

The Court will enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. On the issue of materiality, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505.

The movant bears the burden of establishing the absence of dispute over material facts. *Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d 465, 469 (11th Cir. 1993). In determining whether the party seeking summary judgment has met its initial burden in proving the absence of dispute over material facts, the Court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. *Witter v. Delta Airlines, Inc.,* 138 F.3d 1366 (11th Cir.1998). Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. *Reynolds,* 989 F.2d at 469. If the moving party does not meet its burden, the motion for summary judgment will be denied. *U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991).

**III. Analysis**

The Defendants in this case have argued in their motion for summary judgment that this case should be dismissed for numerous reasons. One of those reasons is that damages, as required by Florida law, have not yet occurred. The Court agrees.

*A. Damages Occurrence*

This case revolves around three main complaints. Those complaints are that the Ogden–Newell Law firm, through Squire Ogden, committed negligence, professional malpractice and breached its fiduciary duty. As a part of its definition, each of these causes of action has the requirement that there be some damage. *See Davenport v. Stone,* 528 So.2d 45, 46

(Fla. App. 3 Dist.1988) (requiring the following elements to establish malpractice: 1) the attorney's employment by the plaintiff (privity); 2) the attorney's neglect of a reasonable duty owed to the plaintiff; and, 3) proof that such negligence resulted in and was the proximate *cause of loss* to the plaintiff); *O'Keefe v. Orea,* 731 So.2d 680 (Fla.App. 1 Dist.1998)(stating the elements of negligence in an as yet unpublished opinion); *Davis v. Bell,* 705 So.2d 108 (Fla.App. 2 Dist.1998)(requiring the following elements to prove negligence: 1) duty; 2) breach of duty; 3) causation; and, *4) damages* ); *Bankers Trust Realty, Inc. v. Kluger,* 672 So.2d 897 (Fla.App. 3 Dist.1996)(*requiring damages* in order to prove a breach of fiduciary duty claim in a real estate agent situation); *Moss v. Appel,* 718 So.2d 199 (Fla.App. 4 Dist.1998)(stating that a real estate agent owes a fiduciary duty to client that is no different than an attorney to a client). Clearly, the absence of damages precludes recovery for malpractice, negligence and breach of fiduciary duty.

The Court has examined the law of the State of Florida and notes there is an appreciable amount of intermixing of two distinct legal ideas. The Florida Courts frequently refer to damages in the statute of limitations sense and then refer to damages in the elements of a tort sense, i.e. they use them interchangeably. This would be more important except for the Florida Legislature's choice to define the statute of limitations as beginning on the "date the cause of action accrues." *Hawkins v. Barnes,* 661 So.2d 1271, 1272 (Fla. App. 5 Dist.1995). The *Hawkins* Court stated that "accrual" occurs when the last element of the underlying cause of action occurs. *Id.* This has lead to some confusion in the Florida case law.[1]

---

1. The Court observes that in certain circumstances there is can be a very real difference between damages for the purposes of a statute of limitations and damages for the purposes of establishing an element of professional malpractice. The Florida courts, and others, have stated that statutes of limitations, "are

designed as shields to protect defendants against unreasonable delays in filing law suits and to prevent unexpected enforcement of stale claims." *Allie v. Ionata,* 503 So.2d 1237 (Fla.1987)(discussing the *res judicata* effect of the running of a statute of limitation). From this, and cases from other jurisdictions, it is

Recognizing this, the Court has analyzed Florida law and has come to the conclusion that Florida courts and the Florida Legislature have not chosen to place this fine a line on the two distinct theories. The Court takes efforts to point this out because the Florida courts at times refer to and analyze the two "types" of damages interchangeably and at other times the Florida courts take the time to analyze substantive damages and then analyze statute of limitations damages. *Compare Hawkins v. Barnes*, 661 So.2d 1271 (Fla. App. 5 Dist.1995) with *Coble v. Aronson*, 647 So.2d 968(Fla.App. 4 Dist.1994). The Court treats the two as interchangeable, following the Florida courts, in the following discussion.

The Supreme Court of Florida has recently spoken definitively about damages and the statute of limitations in the litigation malpractice setting in its as yet unpublished opinion *Silvestrone v. Edell*, 721 So.2d 1173 (Fla.1998). The Supreme Court of Florida specifically decided that when there is an issue of malpractice by an attorney that arose from that attorney's representation of a client in litigation, the statute of limitations does not begin to run until such time as the final judgment order is entered in the case that hosted the alleged malpractice. The Supreme Court of Florida specifically stated, "a malpractice case is hypothetical and damages are speculative until the underlying action is

concluded with an adverse outcome to the client." *Silvestrone*, at 1175.

Florida's Fourth District Court of Appeal ("Fourth DCA") in *Coble v. Aronson*, 647 So.2d 968, 970–1 (Fla.App. 4 Dist. 1994), prior to the Florida Supreme Court's *Silvestrone* decision, stated "the settlement of underlying or related litigation and the consequent failure to complete appellate review thereof does not bar a claim for attorney malpractice where the existence of redressable harm does not depend on the outcome of the litigation." However, it is not necessary to complete the litigation of the case giving rise to the malpractice claim in the malpractice case if professional error is admitted and, impliedly, damages are stipulated. The Fourth DCA cited to *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So.2d 1323 (Fla.1990) [2] and stated "[t]he test for determining when a cause of action for attorney malpractice has accrued is whether the existence of redressable harm has been established."

The accountants in the *Peat, Marwick* case rendered advice to their clients about a certain tax deduction which the clients chose to take and for which the I.R.S. subsequently issued a 90–day deficiency notice. The Florida Supreme Court stated that until such time as the clients objected to the I.R.S. 90–day letter and the issue was concluded in the tax court, there was no cause of action because there was no redressable harm. *Id.* at 1325–27. *Peat,*

clear that the beginning of a statute of limitation period is a policy decision frequently set forth by a legislative body and that, although closely aligned, is slightly different than the accrual of a cause of action. The Fifth District Court of Appeal hinted at this distinction in its *Hawkins v. Barnes*, 661 So.2d 1271 (Fla.App. 5 Dist.1995) decision when it talked of the beginning of a statute of limitation commencing and the need for prior accrual of a cause of action. It is clear that "damages" for statute of limitations purposes and "damages" for the substantive accrual of a cause of action do not have to be the same. One is (frequently) a legislative policy decision while the other is a common law creation. The legislature is free to define it as differently from the common law as it wants to, or, even

to establish a completely different criterion for commencing the running of the statute of limitation altogether. *See also Commercial Union Insurance v. Lewis and Roca*, 183 Ariz. 250, 902 P.2d 1354, 1358 (1995)(discussing the difference between the accrual of a cause of action and when a statute of limitation period commences).

2. The Fourth D.C.A.'s citation to *Peat, Marwick* as defining when "damages" arise for the damages prong of malpractice is illustrative of the confusion in Florida law. *Peat, Marwick* discusses when damages arise in a statute of limitation defense situation, not a substantive tort situation.

*Marwick* and the *Coble* cases when taken together suggest, absent the defendants' stipulation as to damages (and liability), the offended party must complete the appeal process or damages will remain speculative and thus unrecoverable.

The Fourth D.C.A. also states in *Throneburg v. Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell,* P.A., 659 So.2d 1134(Fla.App. 4 Dist.1995) that *Peat, Marwick* required more than a mere knowledge of potential harm to start the statute of limitations. The Fourth DCA applied this holding to its facts which dealt with litigation over the possibility that a lawyer had improperly prepared amendments to a declaration of covenants which created a doubt as to their effectiveness. The *Throneburg* court stated that until such time as the aggrieved party's proffered amendments were dishonored, there was no damage. There must be more than mere speculation. There must be redressable harm.

It should be noted that when the Florida Supreme Court rendered its *Silvestrone* decision it explicitly stated *Peat, Marwick* was a discussion of transactional malpractice and, by implication, it was still good law. *Silvestrone,* at 1174, n. 1 (rejecting the 4th D.C.A.'s opinion in *Zitrin v. Glaser,* 621 So.2d 748 (Fla.App. 4 Dist.1993) that *Peat, Marwick* discussed litigational malpractice and that it in fact dealt with transactional malpractice). From these cases it can quite clearly be determined that the Florida courts require more than mere speculation as to damages in order to either start the statute of limitation's running or to state a cause of action. Speculation ends in a transactional setting only when the documents or legal items "fail" to achieve their designated purpose or in a litigational setting only when the underlying case which gives rise to the malpractice case has been carried to its full appellate conclusion.

■ The case at bar is a transactional one similar to *Throneburg* and *Peat, Marwick.* Florida law requires the trust to fail before damages can be shown to be more than speculative. Until such time as Reverend Porter dies, the IRS deems the trust taxable and the taxability issue is concluded with the IRS, damages under Florida law have not occurred. The Defendants have certainly not admitted either error or damages and without such admissions, this case is not ripe for determination.

### B. Other Pertinent Considerations

Holding aside the Florida Court's wait and see requirement and considering the facts as stated by the Plaintiffs, there is still no proof of damages. The Plaintiffs in this case have admitted that prior to their efforts to have Florida Law changed, the law of Florida relating to the inclusion of the word "welfare" was unclear. Plaintiffs' Second Amended Complaint at paragraph 91. Additionally, the Plaintiffs admit that their claim will continue to be effected by the tax laws as they evolve. Plaintiffs' Second Amended Complaint at paragraph 97. Further, there is some dispute among the parties as to the binding nature of the private letter ruling as it relates to the situation at hand. Specifically, the Defendants argue that inclusion of a comma in the information provided to the IRS resulted in an opinion rendered by the IRS that does not reflect the matter at hand.

As to the IRS private letter ruling, even assuming that the IRS's facts are correct (i.e. assuming in the Plaintiff's favor), this does nothing to prove that the IRS would have found the trust taxable prior to the change—it only shows that the new facts yield no taxability under the then current IRS law.

Furthermore, the Plaintiffs complain they have suffered damages by spending a million dollars in order to have Florida law changed. Holding aside the disturbing nature of money politics, the Court notes that the Plaintiffs have admitted that prior to their lobbying Florida law was unclear

on what the term "welfare" meant. This admission shows that the Plaintiffs cannot state that their efforts were even necessary. Assuming, arguendo, that the Plaintiffs' efforts in changing the law were necessary under the law as it then existed, there is no affirmative way of establishing right now that it will have any part to play in a tax determination at Reverend Porter's death. That is, the IRS could be done away with completely and the tax law, as we know it, abolished. It is not fair to call the lobbying efforts "mitigation" of damages because there was no way of determining that damage had occurred at the time the lobbying efforts were made. Any damages which the Plaintiffs were trying to fix were purely anticipatory and uncertain as to their effect. Mitigation requires harm and a repair to that harm. Mitigation cannot occur prior to the existence of damages.

The result of these factors is, even when Florida law is held aside, the Plaintiffs have not been able to plead any facts which lead the Court to believe that any damages have occurred at this time. The Plaintiffs are basically asking the Court to look into its Magic Eight Ball and make a prediction of what the law will be at the Reverend Porter's death. Even assuming that the current tax law could be definitively established and that the IRS could be forced into issuing an opinion as to the effect of the changes in the Florida law on the trust (i.e., issue a before Florida law changed opinion on the taxability of the trust and after the Florida law changed opinion on the taxability of the trust), rather than a private letter ruling, there is no guarantee the laws upon which their decision is made will remain static. In other words, a decision as to what the law is now does not establish what the law will be when Reverend Porter dies. It is just as valid to predict that a flat tax will be instituted as it is to say the current tax law will not be changed at all. The facts themselves do not aid the Plaintiffs in their quest for money.

### C. Conclusion as to Damages Issue

The Court has examined the law of Florida and has not been able to determine that Florida law defines "damages" for the purposes of professional malpractice any differently than it does for breach of fiduciary duty or simple negligence. As such, damages have not occurred and the Plaintiffs cannot prove all of the elements of their case according to the requirement of Florida law. The Florida courts in these situations follow what can be described as a "wait and see" method. See *Peat, Marwick, Throneburg* and *Silvestrone*. The Plaintiffs are premature.

This case is due to be **DISMISSED WITHOUT PREJUDICE.**

### IV. Declaratory Judgment

■ The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, is designed to allow the federal courts to declare the rights and relations of any interested party seeking such declaration, whether or not further relief is sought. The Plaintiffs in this case have requested that the Court declare that the Defendants are liable to the Plaintiffs for any and all claims by the Plaintiffs that arise from the events herein. The Court is unwilling to do this for two reasons, the first is that the Plaintiffs in order to be entitled to this type of declaration would have to prove their right to relief under state law. See *Atlanta Gas Light Company v. Aetna Casualty and Surety Company*, 68 F.3d 409 (11th Cir.1995)(discussing justiciable case or controversy in a declaratory judgment setting). This they have not been able to do. Furthermore, the Court finds as a matter of law, that even assuming the Plaintiffs were able to prove damages in some manner at this instant, they still would be faced with the insurmountable task of proving some relationship between the damages they request and the events surrounding this litigation. In the negligence and malpractice issue (as well as the breach of fiduciary duty allegation) the Plaintiffs are asking for the Court

to ignore the requirement under state law that there be some proximate relationship between the hypothetical breach of duty and the damages which the Plaintiffs allege may occur in the future. That is, the Plaintiffs request blanket liability. This the Court is unwilling to do as it contravenes Florida State law.

## V. Kentucky Law Relating to Damages

The Court thinks it prudent to address the choice of law issue that the Defendants awkwardly raise relating to punitive damages in their appeal from the magistrate's Order (Doc. # 242). This document is styled: "Defendants' Objections to Magistrate Judge's Order on Defendants' Motion for Protective Order and Objections to Plaintiff's Requests for Production and Interrogatories Served on May 27, 1998 and Memorandum of Law in Support". The Defendants and the Plaintiffs in this case appeared before the magistrate judge in a hearing to determine the Defendants' entitlement to a protective order. The Defendants proffered several arguments for their entitlement to a protective order and among those arguments was an impromptu oral discussion (only loosely termed a motion) of a choice of law issue relating to the Plaintiffs' entitlement to punitive damages. The magistrate judge in its order (Doc. # 239), issued after the hearing, stated that the Defendants were too late in raising their complaints about the Plaintiffs' demand for punitive damages and that those complaints should have been raised within the ten days following the Plaintiffs' request for filing. The magistrate did not address the choice of law issue in its order. The Defendants now try to raise it in their appeal from the magistrates order. The Court thinks the Defendants' tardiness has waived their choice of law arguments. That is, since the filing of this case in 1994, thousands of pages of material and literally dozens of motions have been filed in this case. The entire case has proceeded under Florida law and now that the Defendants see some advantage in a choice of law motion, they furtively grab for it. This the Court will not allow. The choice of law question in the case, generally, has been waived by the Defendants. *See Pulte Home Corp. v. Osmose Wood Preserving, Inc.,* 60 F.3d 734, 739 n. 15 (11th Cir.1995)(discussing waiver of choice of law if a party acquiesces to a courts choice of law decision in prior judicial decisions during the case). Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Defendants' *Motion for Partial Summary Judgment with Regard to Count VIII of the Plaintiffs' Second Amended Complaint, and, Specifically, Plaintiffs' Claim for Punitive Damages and Memorandum of Law in Support Thereof* (Doc. # 257); is **GRANTED**.

2. Defendants' *Motion for Partial Summary Judgment with Regard to Count I through VII and IX of Plaintiff's Second Amended Complaint and Memorandum of Law in Support* (Doc. # 260) is **GRANTED**.

3. Plaintiffs' *Motion for Partial Final Summary Judgment* (Doc. # 283) is **DENIED**.

4. Defendants' *Objections to Magistrate Judge's Order on Defendants' Motion for Protective Order and Objections to Plaintiff's Requests for Production and Interrogatories Served on May 27, 1998 and Memorandum of Law in Support* (Doc. # 242) is **DENIED**.

5. This case is **DISMISSED WITHOUT PREJUDICE**.

6. All other pending Motions are **DENIED** as **MOOT**.

7. The **CLERK** is **DIRECTED** to **CLOSE** this **FILE**.