**In re Francis P. TOMAIOLO, Debtor.**

**Bankruptcy No. 90–40350–JFQ.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 11, 1997.

---

### DECISION ON TRUSTEE'S MOTION FOR TURNOVER

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Before the court is the motion of Stephen M. Rodolakis, the chapter 7 trustee (the "Trustee"), for an order requiring the law firm of Brister & Zandrow, L.L.P. to turn over all the firm's files, notes and other work product relating to certain claims asserted by Francis P. Tomaiolo (the "Debtor"). The claims are against the Debtor's bankruptcy attorneys, Stanley Labovitz, John Burdick and Lucille DiLeo (the "Defendants"). Burdick previously practiced law with Labovitz and formed an association with DiLeo after the Debtor's bankruptcy filing. Suit on the claims is now pending in Worcester Superior Court, Docket No. WOCV95–15625C.

Although the motion is nominally one for turnover of documents, its disposition requires a determination of who owns the

claims as between the Debtor and Debtor's bankruptcy estate. I place ownership in the estate because the Debtor held a property interest in all but one of the claims at the time of his chapter 11 filing, whether or not these claims had then accrued under state law, and because the Debtor acquired the other claim as a representative of the estate after the filing. I therefore elide the question whether a chapter 11 debtor who is an individual can acquire a postpetition claim in his individual capacity rather than as debtor in possession on behalf of the estate.

## I. FACTS

The facts are undisputed. In August of 1989, the Debtor sought the services of the law firm of Labovitz & Burdick concerning the financial difficulties of his real estate development and construction business. He did business as a sole proprietor under the name of "Tomaiolo Development Company." Labovitz and Burdick then practiced together, concentrating in the areas of bankruptcy and insolvency. Massachusetts was in the midst of a real estate recession. During the ensuing months, the Debtor met with either Labovitz or Burdick, or both, on numerous occasions. They eventually advised him to file a petition under chapter 11.

The Debtor filed a chapter 11 petition on March 15, 1990. With the petition he filed, and signed, a schedule of his assets and a Statement of Financial Affairs. Burdick applied to the court for appointment as Debtor's counsel and by order dated April 5, 1990 was so appointed. The Debtor operated his business as debtor in possession.

On September 11, 1991, the United States trustee filed a motion to convert the case to chapter 7, which the court granted on October 3, 1991. The Trustee was appointed shortly thereafter.

By indictment dated June 17, 1993, a federal grand jury returned 13 counts against the Debtor, charging him with bankruptcy fraud under sections 2 and 152 of Title 18, United States Code. Counts 1, 3, 4 and 5 accused him of making false statements in the Statement of Financial Affairs filed with his petition in failing to list certain bank accounts maintained within two years prior to the petition, in failing to list certain transfers made within a year of the petition filing, in failing to state he had done business under the name "Chancellor Aviation" and in stating he had no assets beyond those listed. Count 2 was for filing a schedule of assets with his petition which concealed assets from his creditors. Counts 6 through 10 were for fraudulent transfers and concealment of property in failing to deposit into his debtor-in-possession account five checks payable to Tomaiolo Development Company which he received after the petition filing. Count 11 was for false statements in his bankruptcy schedules as to the values of various properties he claimed as exempt. Count 12 was for a false statement in the Statement of Financial Affairs concerning the prepetition issuance of financial statements. Finally, in count 13, the indictment accused the Debtor of making a false statement in his Statement of Financial Affairs in failing to include information on certain litigation in his answer to a question asking what law suits had been terminated in the year prior to the filing.

On March 11, 1994, a petit jury returned a verdict of guilty under counts 8, 9 and 10, all relating to failure to deposit postpetition checks into a debtor-in-possession account. The jury found the Debtor not guilty under counts 1–5 (false statements and concealment of assets in his bankruptcy filings) and counts 11–13 (false statements in his bankruptcy filings). The jury was unable to reach a verdict on count 6 (failure to deposit a postpetition check). The prosecution had previously withdrawn count 7.

The pending complaint against Labovitz, Burdick and DiLeo contains six counts: a negligence count by the Debtor against each defendant and a count against each defendant by the Debtor's wife for loss of consortium. The Debtor's negligence counts against Labovitz and Burdick allege each of these defendants breached his "duty to handle [the Debtor's] bankruptcy with the skill and care ordinarily possessed by the average practitioner." The complaint goes on to allege Labovitz and Burdick "breached this duty by negligently advising [the Debtor] to file bankruptcy, by preparing and filing a defective chapter 11 petition, by failing to

adequately cure the errors and omissions relative to the petition, by failing to properly handle [the Debtor's] bankruptcy proceedings, and by failing to advise [the Debtor] of his rights, duties and obligations as a debtor." References in the complaint to the "petition" are apparently to the schedule of assets and the Statement of Financial Affairs filed with the petition. The negligence count against Burdick also alleges Burdick breached his duty of care "by failing to properly oversee the actions of his partner." The count against DiLeo, with whom Burdick formed an association after Labovitz had been suspended from the practice of law, omits only the allegations concerning negligent advice to file for bankruptcy and filing a defective chapter 11 petition. The complaint asserts in all three counts that as a result of the negligence of the Defendants the Debtor "experienced damage to his reputation, lost profits, lost business opportunities, out of pocket expenses, exposure to criminal charges and liability and emotional distress."

## II. INCLUSION OF DEBTOR'S NEGLIGENCE CLAIMS IN BANKRUPTCY ESTATE

To determine whether the Debtor's negligence claims belong to the bankruptcy estate, I begin, as I must, with the language of the statute. The bankruptcy estate includes, with immaterial exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1994).

■ The Debtor contends he had no claim against any of the Defendants at the time of the chapter 11 filing, and hence had no "interest[s] ... in property" with respect to those claims at the filing. This is so, the Debtor says, because under Massachusetts law these malpractice claims did not accrue until a later date. In Massachusetts, a malpractice claim accrues for statute of limitations purposes when there occurs a " 'necessary coalescence of discovery and appreciable harm.' " *Murphy v. Smith*, 411 Mass. 133, 579 N.E.2d 165, 167 (1991) (quoting *Cantu v. Saint Paul Cos.*, 401 Mass. 53, 514 N.E.2d 666, 668–69 (1987)). At the time of the petition filing, the Debtor asserts, he had neither

discovered the malpractice nor incurred appreciable harm from it. There are two answers to this argument, one provided by Massachusetts law and one by federal decisions on what property interests are includible in the estate.

### A. Accrual of Malpractice Claims Under Massachusetts Law

■ I assume in this part that to be included in the Debtor's bankruptcy estate the claims must have accrued under Massachusetts law at the time of the bankruptcy filing. When closely examined, the bulk of the Debtor's claims had accrued by the time of the bankruptcy filing. Most of the allegations in the pending state court complaint are for negligence in prepetition advice and in prepetition services related to the preparation of documents filed with the petition concerning the Debtor's assets and financial affairs. These allegations mirror many of the counts contained in the indictment. The Debtor signed those documents. They pertain to his own assets and financial affairs. He obviously should have known of any misstatements when he signed them. Prior to the filing, therefore, he should have discovered the alleged malpractice. That is sufficient to meet the discovery requirement under state law. *See Hendrickson v. Sears*, 365 Mass. 83, 310 N.E.2d 131, 136 (1974) (cause of action for malpractice occurs when the event complained of "is discovered or should reasonably have been discovered, which ever [sic] first occurs.").

■ The Debtor is not saved by the Massachusetts requirement that a plaintiff must incur appreciable harm for a cause of action to accrue. This requirement cannot be divorced from the knowledge that is charged to a plaintiff. The relationship between appreciable harm and knowledge is apparent from the statement in decisions of the Supreme Judicial Court of Massachusetts that a malpractice claim "does not accrue until a plaintiff knows or reasonably should know that it has sustained appreciable harm as a result of a defendant's negligence." *Cantu v. Saint Paul Cos.*, 401 Mass. 53, 514 N.E.2d 666, 668 (1987) (quoting *Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple,*

394 Mass. 265, 475 N.E.2d 390, 391 (1985)). It is not necessary that a plaintiff be aware of the full extent of the harm. *Id.* The Debtor knew, or should have known, that any false statements and concealments in his bankruptcy filings were transgressions which could bring about serious consequences. That is enough.

The Debtor also relies on the doctrine which tolls the statute of limitations for legal malpractice claims while the plaintiff continues to be represented by the same attorney. The question before me, however, concerns the presence of a property interest in a cause of action for legal malpractice, not the tolling of a statute of limitations. Moreover, the rationale of the continuing representation doctrine is its recognition " 'that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered.' " *Murphy v. Smith,* 411 Mass. 133, 579 N.E.2d 165, 168 (1991) (quoting *Greene v. Greene,* 56 N.Y.2d 86, 451 N.Y.S.2d 46, 49, 436 N.E.2d 496, 499 (1982)). *See also Cantu v. Saint Paul Cos.,* 401 Mass. 53, 514 N.E.2d 666, 669 (1987). The principal malpractice alleged by the Debtor is negligence in preparation of false documents which he signed and should have realized were false. Because the documents relate to his own assets and financial affairs, the Debtor faced no layman's difficulty in assessing the quality of his counsel's services in preparing them. All he had to do was read them.

### B. Federal Decisions

#### 1. Section 541(a)(1)

█ Some of the claims alleged in the Debtor's state court complaint may not have accrued at the time of the bankruptcy filing for purposes of the Massachusetts statute of limitations. The complaint alleges, for example, that it was negligent for the Defendants to advise the Debtor to file for bankruptcy in the first place. It is not obvious the Debtor should have known, prepetition, that he had sustained appreciable harm from this advice. The complaint also asserts the Defendants

failed "to adequately cure the errors and omissions relative to the petition" and failed "to advise [the Debtor of] his rights, duties and obligations as a debtor."

█ All these claims (as well as those related to the documents filed with the chapter 11 petition) are property of the bankruptcy estate even though they may not have accrued by the time of the filing under Massachusetts law. The rights in claims held by a debtor and passing to his bankruptcy estate are not confined to those elements sufficient to trigger the running of the statute of limitations. Questions concerning the statute of limitations have their own unique considerations. Whether such rights are to be included in the bankruptcy estate involves bankruptcy policy considerations. It is sufficient for estate inclusion purposes that the rights have prepetition roots.

The leading decision is *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). The question there was whether a claim for tax refunds which was applied for and received postpetition was property of the bankruptcy estate. The refunds were the result of carrying back, to income of prior years, losses which were sustained during the calendar year of bankruptcy and prior to the filing. Federal tax law permitted the claim to be made only after the calendar year had closed, which occurred after the bankruptcy filing. At the time of the filing, it was possible that the claim would be increased or decreased by losses incurred or income earned during the balance of the calendar year. Thus no claim had accrued at the time of the bankruptcy filing. The debtors therefore contended their prepetition rights in the claim were too tenuous to be considered property interests passing to the bankruptcy estate at the filing.

The Court in *Segal* included the claim in the bankruptcy estate. It observed that a principal purpose of bankruptcy law is "to leave the bankrupt free after the date of his petition to accumulate new wealth in the future." *Id.* at 379, 86 S.Ct. at 515. The Court stated: "[W]e believe [the refund claim] is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered

fresh start that it should be regarded as 'property' under s[ection] 70a(5)." *Id.* at 380, 86 S.Ct. at 515. It said "two key elements pointing toward realization of a refund existed at the time these bankruptcy petitions were filed: taxes had been paid on net income within the past three years, and the year of bankruptcy at that point exhibited a net operating loss." *Id.* Although *Segal* was decided under the prior Bankruptcy Act, Congress intended its principles to control Section 541 of the Code. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977); S.Rep.No. 95–989, 95th Cong., 2d Sess. 82 (1978). *Segal* has been followed in Code cases dealing with incipient rights such as those we have here. *See e.g., In re Weyland,* 63 B.R. 854 (Bankr.E.D.Wis.1986) (including in bankruptcy estate rights flowing from debtor's prepetition bid to enter into dairy termination program).

The Debtor's malpractice claims are "sufficiently rooted in the pre-bankruptcy past" to be includible in his bankruptcy estate. His claims concerning advice given him to file bankruptcy and concerning services in the preparation of documents filed with the petition are obviously based upon prepetition conduct of the Defendants. Although he alleges postpetition negligence in the Defendants' failure to cure errors in those documents, this conduct too has prepetition roots in the documents' initial preparation.

The Debtor also complains the Defendants failed to advise him of "his rights, duties and obligations as a debtor." This is apparently in reference to the Debtor's failure to deposit postpetition checks into his debtor-in-possession account, which was the basis for all the counts under which the Debtor was found guilty. Lawyers should normally advise a client as to such matters prior to the filing. Here Burdick and Labovitz were involved with the Debtor and his financial difficulties for many months before the chapter 11 case commenced. They obviously had plenty of time during this period to advise the Debtor as to his rights, duties and obligations as a debtor in possession. This claim has prepetition roots as well.

I disagree with *Swift v. Seidler (In re Swift),* 198 B.R. 927 (Bankr.W.D.Tex.1996), which analyzes the issue only in terms of claim accrual under state law. *Swift* contains no discussion of *Segal,* apparently because, as happened here, *Segal* was not cited to the court as controlling authority. *Swift* instead relies upon decisions such as *In re Missionary Baptist Foundation of America,* 792 F.2d 502 (5th Cir.1986), which is not directly on point and merely notes in passing that section 541(a) is "analyzed by reference to the applicable state law …" *Id.* at 504. That is true. As we have seen, however, a debtor's property rights in a cause of action are not confined to rights necessary to form a matured claim. The court in *Swift* also seems to have been led astray by decisions such as *Wischan v. Adler (In re Wischan),* 77 F.3d 875 (5th Cir.1996), holding that a claim which had accrued prepetition for purposes of the statute of limitations is property of the estate. *Wischan* does not stand for the proposition that such accrual is a *sine qua non* for rights to become estate property. Claims such as those present here have been included in the bankruptcy estate under various theories. *See Ellwanger v. Budsberg (In re Ellwanger),* 140 B.R. 891 (Bankr. W.D.Wash.1992) (bankruptcy estate includes prepetition malpractice claim, which at filing was contingent upon dismissal of debtor's appeal from adverse ruling); *Jones v. Hyatt Legal Services (In re Dow),* 132 B.R. 853 (Bankr.S.D.Ohio 1991) (bankruptcy estate includes malpractice claim for alleged negligent preparation of schedules filed with petition because section 541(a)(1) refers to the debtor's property interests "as of" case commencement).

### 2. *Section 541(a)(7)*

 Left for consideration is the Debtor's claim that the Defendants did not properly "handle" his "bankruptcy proceeding." This claim is vague enough to be one for negligence unrelated to prepetition conduct. It apparently refers to the Defendants' services in connection with the motion to convert the case to chapter 7 which was filed by the United States trustee's office and granted by the court. The Debtor's opposition to the present motion asserts the Defendants failed to oppose conversion. Having no pre-

petition roots, this claim is not a property interest of the Debtor passing to the bankruptcy estate under section 541(a)(1) of the Code. But it later became estate property under section 541(a)(7), which brings into the estate "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (1994). The motion to convert concerned estate administration. The Debtor as the existing estate representative, and the Defendants as his counsel, were representatives of the estate with respect to that motion. Counsel for a debtor in possession may represent the individual interests of a debtor in only a few instances.[1] Case conversion is not one of them. If the Defendants' services were deficient with respect to the conversion to chapter 7, the estate's rights were abridged. Liquidation under chapter 7 typically produces less for creditors than does a confirmed chapter 11 plan. To the extent the Debtor incurred a resulting loss, so did creditors, who are the estate's prime beneficiaries. Any loss to the Debtor was derivative of the estate's loss. It follows that this claim was acquired by the estate under section 541(a)(7).

The Debtor's negligence claim with respect to services related to the chapter 7 conversion is quite different from the type of postpetition claim which some courts have kept out of the estate as having been acquired by a debtor in his individual capacity rather than as representative of the estate as debtor in possession. For example, in *In re Doemling*, 116 B.R. 48 (Bankr.W.D.Pa.1990), an individual chapter 11 debtor in possession sustained injuries in a postpetition automobile accident. The court held the resulting negligence claim did not become part of the bankruptcy estate because it was acquired by the debtor individually rather than by the "estate" under section 541(a)(7).[2] Coming out the other way is *In re Griseuk*, 165 B.R.

956 (Bankr.M.D.Fla.1994). The court there included in the estate a personal injury claim acquired by the debtor while he was a debtor in possession. Rather unconvincingly, the court said it was illogical to "allow the debtor in possession to select what non-exempt assets are property of the estate...." *Id.* at 958.

I need not decide whether a postpetition claim of the type in *Doemling* becomes property of the estate. Unlike the claim in *Doemling*, the Debtor's claim concerning conversion relates to services performed for the estate.

## III. DEBTOR'S EXEMPTION RIGHTS

 The Debtor has elected to take his federal exemptions. Because at the petition filing he was apparently unaware of the claims at issue here, the Debtor did not elect to claim them as exempt. Section 522(d)(11)(E) grants exemption rights for "a payment in compensation of loss of future earnings of the debtor ... to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(11)(E) (1994). The Debtor's state court complaint seeks damages for loss of future earnings. I will permit the Debtor to amend his schedules to claim an exemption in that portion of any recovery on these claims which is attributable to loss of earnings from the Debtor's personal services to the extent reasonably necessary for the support of the Debtor or his dependents.

## IV. CONCLUSION

For the foregoing reasons, a separate order has issued granting the motion for turnover, declaring the claims pending in the Worcester Superior Court action to be property of the bankruptcy estate, permitting the Debtor to assert an exemption with respect

---

1. Most notable is a debtor's role in proposing a plan of reorganization. Creditors, or a committee of creditors, represent themselves in bargaining on a plan. The Code recognizes the nonrepresentative capacity of a debtor in the chapter 11 plan context by referring to the debtor as "debtor" rather than "trustee" when it speaks of the debtor's actions concerning its plan. 11 U.S.C. § 1121 (1994).

2. The court in *Doemling* distinguished *In re Acton Foodservices Corp.*, 39 B.R. 70 (Bankr. D.Mass.1984), on the ground that the postpetition tort claim of the individual chapter 11 that the court there included in the bankruptcy estate was a claim for damages to the debtor's prepetition property interest which had passed at the filing to the estate. *Doemling*, 116 B.R. at 50.

to that portion of the claims covered by section 522(d)(11)(E), and granting the Trustee the sole right to prosecute the action for the benefit of both the estate and the Debtor.

### *ORDER ON TRUSTEE'S MOTION FOR TURNOVER*

The Trustee having filed a motion for an order requiring the law firm of Brister & Zandrow, L.L.P. to turn over all the firm's files, notes and other work product relating to certain claims asserted by Francis P. Tomaiolo (the "Debtor"), and the court having today issued a decision thereon, in accordance therewith it is hereby

**ORDERED,** that:

1. The motion for turnover is granted and the law firm of Brister and Zandrow, L.L.P. is ordered to turn over, forthwith, all the firm's files, notes and other work product relating to the claims of the Debtor against Stanley Labovitz, John Burdick and Lucille DiLeo which are now pending in Worcester Superior Court.

2. Subject to the Debtor's limited exemption rights set forth herein, said claims are property of the bankruptcy estate.

3. The Debtor may, within twenty days from now, amend his bankruptcy schedules to claim a limited exemption in said claims pursuant to 11 U.S.C. § 522(d)(11)(E) (1994).

4. Stephen M. Rodolakis, the chapter 7 trustee, has the sole right to prosecute said claims for the benefit of both the estate and the Debtor.

5. The Debtor's wife shall continue to have the right to prosecute her related claim for loss of consortium.