**In re Ahmad ALIPOUR and Veronica M. Alipour, Debtors.**

**Ahmed Alipour, Plaintiff,**

v.

**Russell S. Thomas and Williams, Reed, Weinstein, Schifino & Mangione, P.A., Defendants.**

**Bankruptcy No. 98–21861–8G7.
Adversary No. 00–23.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 7, 2000.

Henderson, P.A., Tampa, FL, for defendant.

## ORDER ON CHAPTER 7 TRUSTEE'S MOTION FOR SUBSTITUTION AS PARTY PLAINTIFF

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Substitution as Party Plaintiff filed by Stephen L. Meininger, the Chapter 7 Trustee.

This adversary proceeding consists of a professional malpractice action initially commenced in the Circuit Court for Hillsborough County, Florida, by Ahmad Alipour, the Debtor in this chapter 7 case. The case was removed to this Court by the Defendants, Russell S. Thomas and Williams, Reed, Weinstein, Schifino & Mangione, P.A. In the Motion for Substitution as Party Plaintiff, the Trustee asserts that the action constitutes property of the chapter 7 estate, and therefore requests that he be substituted as party plaintiff to prosecute the claim.

In response, the Debtor contends that the claim is not property of the bankruptcy estate because the cause of action did not arise until after the chapter 7 petition was filed. Specifically, the Debtor asserts that a cause of action for legal malpractice does not actually arise until all appeals in the underlying litigation have been exhausted, and that the appellate process in this case was not concluded until after the bankruptcy petition was filed.

### Background

Prior to July of 1998, the Debtor operated a retail gasoline station located in Pinellas County, Florida. The Debtor operated the station as a Chevron franchisee. On April 20, 1995, Chevron sent the Debtor a letter advising him that Chevron had decided to sell the station to a third party. The letter further provided the Debtor with a right of first refusal to purchase the station, and notified the Debtor that the Debtor may exercise the right by signing and returning an attached Purchase and

Martin Errol Rice, St. Petersburg, FL, Thomas D. Masterson, Masterson, Rogers, Masterson & Lopez, Tampa, FL, Patrick R. Smith, Feinberg & Isaak, P.A., dba Debt Rel, Tampa, FL, for debtors.

Stephen L. Meininger, Meininger, Bianco & Porto, P.A., Tampa, FL, Chapter 7 Trustee.

John Edwin Fisher, Deborah Gallagher Warner, Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlop, P.A., Orlando, FL, Douglas McClurg, Hill, Ward &

Sale Agreement within 45 days after receipt of the letter. If the Debtor elected not to exercise the right, the station would be sold to the third party.

In May of 1995, the Debtor retained the Defendants to represent him in connection with his negotiations with Chevron and the right of first refusal. The Defendants communicated and exchanged correspondence with Chevron in May and June of 1995. On June 21, and June 23, 1995, however, Chevron notified the Debtor that the Debtor had failed to timely exercise his right of first refusal. Chevron also notified the Debtor that it was therefore required to proceed to closing on the sale of the station to the third party.

Shortly thereafter, the Debtor filed an action in the United States District Court seeking injunctive and declaratory relief, as well as damages, against Chevron and the purchaser. On March 19, 1998, the District Court entered an Order in favor of Chevron and the purchaser, and against the Debtor.

The Debtor appealed the District Court's decision to the Eleventh Circuit Court of Appeals.

In July, 1998, while the appeal to the Eleventh Circuit was pending, the Debtor was required to vacate the gasoline station.

The Debtor filed his petition under chapter 7 of the Bankruptcy Code on December 15, 1998.

Approximately six weeks later, on February 1, 1999, the Eleventh Circuit entered an Order affirming the decision of the District Court.

On December 7, 1999, the Debtor filed a Complaint against the Defendants in the Circuit Court for Hillsborough County, Florida. In the Complaint, the Debtor alleged that the Defendants had negligently breached their duty to him in the representation of his interests regarding the right of first refusal. As a result of the Defendants' negligence, the Debtor alleged that he had sustained damages which included the loss of the value of the property and the loss of the business rights to operate the gasoline station.

On January 6, 2000, the Defendants removed the state court action to the Bankruptcy Court.

**Discussion**

The Trustee contends that the malpractice action against the Defendants constitutes property of the chapter 7 estate under § 541 of the Bankruptcy Code because it is based on conduct of the Defendants that occurred prepetition. The Debtor contends that the malpractice claim is not property of the estate, since the cause of action did not arise until the Eleventh Circuit Court of Appeals affirmed the District Court's Order in favor of Chevron, which occurred after the filing of the bankruptcy petition.

The Debtor has cited the following cases in support of his position that the cause of action did not arise until the Order was entered by the Eleventh Circuit: *Silvestrone v. Edell,* 721 So.2d 1173 (Fla.1998); *Peat, Marwick, Mitchell & Co. v. Lane,* 565 So.2d 1323 (Fla.1990); *Throneburg v. Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, P.A.,* 659 So.2d 1134 (Fla. 4th DCA 1995); and *Drake v. Simons,* 583 So.2d 1074 (Fla. 5th DCA 1991). Each of these cases involves a determination regarding the point at which the statute of limitations begins to run for a legal malpractice action. Generally, the courts in these cases hold that the statute of limitations for such claims begins to run when a judgment has been entered and becomes final in the underlying litigation.

In *Silvestrone,* for example, the Supreme Court of Florida looked to § 95.11(a)(4)(a) for guidance. Generally, in Florida a statute of limitations begins to run when a cause of action "accrues," defined as "when the last element constituting the cause of action occurs." Fla.Stat. § 95.031. Section 95.11(4)(a) of the Florida Statutes, however, as cited in *Silvestrone,* provides that an action for professional malpractice shall be commenced within

two years "provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." Fla.Stat. 95.11(4)(a). In *Silvestrone*, the Supreme Court held that the statute of limitations begins to run for litigation-related malpractice when the final judgment in the underlying action becomes final. *Silvestrone*, 721 So.2d at 1175–76.

The Debtor also cited *Commerce Bank, N.A. v. Ogden, Newell, and Welch*, 81 F.Supp.2d 1304 (M.D.Fla.1999). *Commerce Bank* simply stands for the proposition that a plaintiff in a professional malpractice action is required to prove that he has sustained damages as an element of his case. Until the damages have occurred, the case is not ripe for determination. *Commerce Bank*, 81 F.Supp.2d at 1310.

The Court has reviewed and considered these cases carefully, but is not persuaded that the cases dealing with the statute of limitations are dispositive of the issue in this case.

■ The issue in the case under consideration involves whether the Debtor's legal malpractice claim against the Defendants constitutes property of the estate under § 541 of the Bankruptcy Code.

■ Section 541(a)(1) provides:

**11 U.S.C. § 541. Property of the estate**

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

"This definition is very broad, and includes causes of action belonging to the debtor at the commencement of the case." *In re*

*Swift*, 129 F.3d 792, 795 (5th Cir.1997). The issue for the Court, therefore, is to determine whether the Debtor had a property interest in the cause of action against the Defendants at the time that the bankruptcy case was filed. *In re Swift*, 129 F.3d at 795.

'The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued.' (Citation omitted).... Recent cases applying these rules have muddied the waters, however. The basic problem is that the issue of accrual of a cause of action rarely occurs apart from the issue of when the statute of limitations begins to run for a particular cause of action. These are two separate and distinct issues aimed at very different problems.

The accrual of a cause of action is a concept closely tied to the fundamental purpose of a cause of action—to make an injured party whole....

The purpose of statutes of limitation is different: they bar the litigation of stale claims at a time removed from when the pertinent events occurred.... *The result is that the statute of limitations may begin to run on a date other than that on which the suit could first be maintained.*

*In re Swift*, 129 F.3d at 795–96. (Emphasis supplied).

In *In re Tomaiolo*, 205 B.R. 10 (Bankr. D.Mass.1997), the Court viewed the distinction between the accrual of a cause of action for statute of limitations purposes, and the accrual of a cause of action for purposes of determining property of a bankruptcy estate, in terms of policy considerations.

All these claims ... are property of the bankruptcy estate even though they may not have accrued by the time of the filing under Massachusetts law. The rights in claims held by a debtor and passing to his bankruptcy estate are not confined to those elements sufficient to trigger the running of the statute of

limitations. Questions concerning the statute of limitations have their own unique considerations. Whether such rights are to be included in the bankruptcy estate involves bankruptcy policy considerations. *It is sufficient for estate inclusion purposes that the rights have prepetition roots.*

*In re Tomaiolo,* 205 B.R. at 14. (Emphasis supplied). In *Tomaiolo,* the Court found that the debtor's malpractice claim was "sufficiently rooted in the prebankruptcy past," and therefore was property of the bankruptcy estate, because it was based on prepetition conduct of the defendants. *Id.* at 15.

The court in *Tomaiolo* considered Supreme Court authority in reaching its conclusion, analyzing the reasoning of *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). The *Tomaiolo* court noted that "[a]lthough *Segal* was decided under the prior Bankruptcy Act, Congress intended its principles to control Section 541 of the Code. (citations omitted). *Segal* has been followed in Code cases dealing with incipient rights such as those we have here. (citation omitted)." *In re Tomaiolo,* 205 B.R. at 15. The *Tomaiolo* court noted: "... a debtor's property rights in a cause of action are not confined to rights necessary to form a matured claim." *Id.*

In *Peltz v. Shidler,* 952 P.2d 793, 796 (Colo.Ct.App.1997), the state court in Colorado relied on the reasoning of *Tomaiolo* in determining whether a legal malpractice suit was property of a bankruptcy estate or, stated alternatively, whether the debtor could have raised the claim as of the commencement of the bankruptcy case.

Claims accruing prepetition for purposes of the relevant statute of limitations have been held to be property of the estate. *In re Wischan,* 77 F.3d 875 (5th Cir.1996). However, these holdings do not stand for the proposition that such accrual is a requirement for claims to become estate property. It is sufficient for estate inclusion purposes that

the claim have prepetition roots. *In re Tomaiolo, supra.*

Here, plaintiff's claims of professional negligence are based upon defendant's prepetition conduct. Although subsequent legal costs to ameliorate that alleged negligence were incurred post-petition, plaintiff's cause of action against these defendants is sufficiently rooted in her pre-bankruptcy past to be includible in her bankruptcy estate. See *In re Tomaiolo, supra.*

*Peltz,* 952 P.2d at 797. The Court in *Peltz* concluded that the plaintiff's legal malpractice claim in that case was property of her bankruptcy estate. *Id.*

Similarly, the District Court in *Scrivner v. Commercial Credit Loans, Inc.,* 1997 WL 312058, at *5 (N.D.Ill.) addressed the issue of whether a claim's "accrual" for statute of limitations purposes is the same as the claim's "accrual" for purposes of determining when it became property of a debtor. In *Scrivner,* the claim accrued "for statute of limitations purposes" after the debtor's chapter 7 case had been completed. In determining whether the claim was property of the estate, however, the District Court first noted that the concept of "property of the estate" is defined very broadly, and generally means that the debtor simply must have a legal or equitable interest in the property at the time that the bankruptcy case is commenced. *Scrivner,* 1997 WL 312058, at *5.

The present case requires only a narrow resolution. Both the conduct underlying the Scrivners' RICO claim and injury to the Scrivners occurred prior to the Chapter 7 petition. The only event that occurred after the filing of the bankruptcy petition was the Scrivners' discovery that they had been injured.... It is held that, where the conduct underlying a claim and the resulting injury both occur prepetition, the debtor has a prepetition property interest in the resulting claim even if he or she has not yet discovered all the facts supporting the claim.

*Id.* at *6. The Court in *Scrivner* therefore determined that it was unnecessary to determine whether a claim with "even some prepetition roots is necessarily prepetition property." *Id.*

Finally, in *In re Richman,* 117 F.3d 1414, 1997 WL 360644 (4th Cir.1997) the issue was whether the debtors had standing to pursue a legal malpractice cause of action, or whether the claim was property of their bankruptcy estate. The Fourth Circuit Court of Appeals determined that such a cause of action accrues for purposes of determining property of the estate under § 541 "when all of the elements of the action are present." *In re Richman,* 1997 WL 360644, at *1. In that case, the Court found that the debtors had sustained their injury at the moment that the petition was filed, and that all of the elements of a malpractice action under state law came into existence at that time. Accordingly, the Court concluded that the cause of action was property of the bankruptcy estate. *Id.* at *2.

Based on the authorities discussed above, the Court finds that the "accrual" of a cause of action for purposes of determining the trigger date for the statute of limitations may be different from the "accrual" of the action for purposes of determining whether the claim constitutes property of a bankruptcy estate under § 541 of the Bankruptcy Code. For purposes of § 541, the test is whether all of the elements of the cause of action had occurred as of the time that the bankruptcy case was commenced, so that the claim is sufficiently rooted in the debtor's prebankruptcy past.

Under Florida law, it is well-established that the elements of a cause of action for legal malpractice are (1) the employment of an attorney; (2) the attorney's neglect of a reasonable duty; and (3) that the attorney's negligence was the proximate cause of loss to the client. *Rowe v. Schreiber,* 725 So.2d 1245, 1249 (Fla. 4th DCA 1999); *Lenahan v. Russell L. Forkey, P.A.,* 702 So.2d 610, 611 (Fla. 4th DCA 1997).

In this case, it is clear that all of the elements of the Debtor's malpractice action against the Defendants, as alleged, had occurred prior to the time that the Debtor filed his chapter 7 petition on December 15, 1998. The Debtor employed the Defendants as his attorneys in May of 1995, shortly after receipt of Chevron's letter dated April 20, 1995. The Debtor alleges that the Defendants negligently breached their duty to him in connection with the negotiations with Chevron, which occurred in May and June of 1995, and in connection with the litigation in the District Court, which was concluded on March 19, 1998. The Debtor vacated the gasoline station in July of 1998, so that certain damages or losses sustained by the Debtor occurred by that date. As indicated above, the chapter 7 case was filed approximately six months later, in December of 1998.

For purposes of § 541 of the Bankruptcy Code, the malpractice claim constituted a cause of action belonging to the Debtor as of the commencement of the Debtor's chapter 7 case, and therefore constitutes property of the bankruptcy estate. Whether the cause of action had "accrued" for purposes of triggering the statute of limitations is not dispositive of this case. Further, the fact that the decision of the Eleventh Circuit Court of Appeals was entered after the filing of the Bankruptcy petition does not alter the conclusion that the malpractice action was property of the Estate. "[T]he failure to obtain appellate review should not bar an action for malpractice.... We are unable to establish a bright-line rule that complete appellate review of the underlying litigation is a condition precedent to every legal malpractice action." *Segall v. Segall,* 632 So.2d 76, 78 (Fla. 3d DCA 1994).

Of course, this determination in no way amounts to any finding on the merits of the malpractice claim asserted in the Complaint. See *In re Richman,* 117 F.3d 1414, 1997 WL 360644, at *2.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Substitution as Party Plaintiff filed by Stephen L. Meininger, as Chapter 7 Trustee, is granted.

2. Stephen L. Meininger, Chapter 7 Trustee, is substituted for the Debtor, Ahmed Alipour, as the Plaintiff in this adversary proceeding, and all future pleadings shall be styled *Stephen L. Meininger, Chapter 7 Trustee, Plaintiff, v. Russell S. Thomas and Williams, Reed, Weinstein, Schifino & Mangione, P.A., Defendants,* Adv. No. 00–23.