IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-60520
_____


In the Matter of:  DAVID WADE and JEANETTE WADE.

                                                        Debtors,
_____

DAVID WADE and JEANETTE WADE,

                                                        Appellees,

                            versus

CHASE MANHATTAN MORTGAGE CORPORATION,

                                                        Appellant.

Appeal from the United States District Court for
the Southern District of Mississippi
(USDC No. 3:00-CV-73)
_____
August 2, 2002


Before REAVLEY, SMITH and DENNIS, Circuit Judges.

PER CURIAM:[*]

         This appeal is dismissed for want of jurisdiction.

_____

         [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

There has been no certification to warrant interlocutory appeal. The district court referred to the bankruptcy court's order as interlocutory, as does Chase's notice of appeal; but Chase contends in this court that the judgment is final under 28 U.S.C. § 158(d). That is untenable. Chase's defense to the Wades' suit, that their claims were property of the former bankruptcy estate, has been rejected. Nothing more. The merits of the Wade claims have not been addressed. That remains in the district court, and apparently still as an adversary proceeding in the bankruptcy court. This is comparable to the case of In re Greene County Hospital, 835 F.2d 589 (5th Cir. 1988), where we dismissed an appeal from a bankruptcy court's order on its jurisdiction.

Appeal dismissed.

JERRY E. SMITH, Circuit Judge, dissenting:


The majority concludes that because the parties have more litigation ahead of them, the district court's order is not final and not appealable. While this may be correct under 28 U.S.C. § 1291, that is not the statute before us.

Bankruptcy appeals are governed by 28 U.S.C. § 158, *In re Moody*, 817 F.2d 365, 366 (5th Cir. 1987), which employs a "more flexible notions of finality." *In re Greene County Hosp.*, 835 F.2d 589, 593 (5th Cir. 1988).[1] The majority overlooks our § 158 caselaw and thereby reaches a wrong result. I would conclude that we have jurisdiction and would decide that some of the claims belong to the Wades and some to Chase Mortgage. Accordingly, I respectfully dissent.


I.

"To be appealable, an order must be final with respect to a single jurisdictional unit . . . . For the purposes of § 1291, the single jurisdictional unit is the case as a whole." *Id.* at 593-94. For purposes of § 158, by contrast, the bankruptcy order need only "resolve a discrete unit in the

---

[1] *Accord In re Bartee*, 212 F.3d 277, 282 (5th Cir. 2000); *In re Orr*, 180 F.3d 656, 659 (5th Cir. 1999).

larger case." *Id*. at 595. We have held that a "bankruptcy court's recognition of a creditor's security interest is a final order [because s]uch an order conclusively establishes a claim against the estate." *Id.* (citing *In re Lift & Equip. Serv., Inc.*, 816 F.2d 1013 (5th Cir. 1987)). "Similarly, a turnover order, ordering an individual to turn over an antique coin, is final, settling authoritatively the inclusion of a piece of property in the estate." *Id.* (citing *In re Moody*, 817 F.2d 365 (5th Cir. 1987)). The relevant question is whether the order "conclusively determine[s] substantive rights." *Id.* (internal quotation marks omitted).

The district court characterized the bankruptcy court's order as interlocutory.[2] If the bankruptcy order was interlocutory, then the district court's affirmance of it was, as well, and we have no jurisdiction. *See Wood & Locker*, 868 F.2d at 142 ("[A] district court's decision on appeal from a bankruptcy court's interlocutory order is not a final order for purposes of further appellate review unless the district court order in some sense 'cures' the nonfinality of the bankruptcy court order."). But, we cannot defer to the district court's

---

[2] The district courts, unlike the courts of appeals, may take jurisdiction of interlocutory appeals from the bankruptcy court. 28 U.S.C. § 158(a).

4

assessment on this issue. *Moody*, 817 F.2d at 366-67; *Bartee*, 212 F.3d at 283. Instead, we must judge the finality of the bankruptcy court order for ourselves. *Moody*, 817 F.2d at 366-67.

Almost all the confusion over our jurisdiction arises from the unusual procedural posture of this case. Once we step back and understand the effects of the bankruptcy court's ruling, it becomes apparent that it is a final order.

The Wades' bankruptcy proceeding had already closed; Chase Mortgage moved to reopen it, arguing that because the state law claims belonged to the estate, the case was one "arising under" or "related to" bankruptcy law. 28 U.S.C. § 157(a). The case was referred to the bankruptcy court to decide one questionSSwhether the state law claims belong to the Wades or the estate. Once the bankruptcy court (and the district court on appeal) concluded that the claims belong to the Wades, they re-closed the Wades' bankruptcy case.

All proceedings before the bankruptcy court are now over, and the Wades' bankruptcy case is again closed. There are no remaining factual disputes for the bankruptcy court to resolve. *See In re Aegis Specialty Mktg. Inc.*, 68 F.3d 919, 921 (5th Cir. 1995). The district court's decision "ends the litigation

5

on the merits and leaves nothing for the court to do but execute the judgment." *Orr*, 180 F.3d at 659. So, the decision easily passes § 158's flexible definition of finality. *Id.*

The fact that there may be additional litigation in Mississippi's state courts or in federal district court does not affect our analysis. *See In re Adams*, 809 F.2d 1187, 1188-89 (5th Cir. 1987). That litigation will cover Mississippi tort law. The bankruptcy litigation and all appeals under § 158 are now over. Chase Mortgage will not have a second opportunity to appeal under § 158.

We confronted a similar situation in *Adams.* The case began as a state court suit. *Id.* at 1188. When the defendant declared chapter 13 bankruptcy, he removed the state claims to bankruptcy court. *Id.* The plaintiffs, apparently misconstruing the scope of their bankruptcy remedies, voluntarily dismissed the state suit. Later, they realized their error and had the bankruptcy court reinstate the state court suit. *Id.* The district court affirmed the bankruptcy court's order of reinstatement, dismissed the appeal, and remanded to state court. *Id.* We held that the bankruptcy court order reinstating the lawsuit and the district court order dismissing the

appeal were final, reviewable orders under § 158(d).[3] *Id.* at 1189. In *Adams*, as in this case, the parties had yet to litigate their state law claims, but because the court's order resolved all bankruptcy issues between the parties, we deemed it reviewable.

*In re Greene County Hospital* does not alter this analysis. We stated that "denial of a motion to dismiss for lack of subject matter jurisdiction is not a final order" under § 158(d). *Greene*, 835 F.2d at 596. Superficially, this language sounds relevant to the Wades' caseSSthe bankruptcy court in the Wades' case also refused to dismiss their claims for lack of subject matter jurisdiction. But the similarity ends there.

In *Greene*, a creditor moved to dismiss a hospital's bankruptcy petition on the ground the hospital was not eligible to file for bankruptcy. The bankruptcy court ruled that the hospital could file under chapter 9, and the district court affirmed. *Id.* We ruled that a bankruptcy court's finding that it has subject matter jurisdiction over a bankruptcy petition is not an appealable, final order under § 158. *Greene*, 835 F.2d at 590.

---

[3] We noted that 28 U.S.C. § 1452 precluded us from reviewing the district court's remand order. *Adams*, 809 F.2d at 1189.

In the Wades' case, however, the bankruptcy court did not rule that *it* had subject matter jurisdiction to decide the Wades' state tort claims. The appeal before us does not involve the bankruptcy court's subject matter jurisdiction at all. The bankruptcy court ruled that certain property (the state tort claims) belongs to the Wades, not the estate. Accordingly, the decision is one over whether property is included in the estate, one we deem final under § 158. *Cf. Moody*, 817 F.2d at 368 (bankruptcy court's turnover order final); *In re England*, 975 F.2d 1168, 1172 (5th Cir. 1992) ("An order which grants or denies an exemption will be deemed a final order for the purposes of 28 U.S.C. § 158(d).").

The district and bankruptcy courts' references to the Wades' standing to litigate[4] do not change our analysis. In this case, stating the Wades have standing to assert the claims is just another way of stating the claims belong to them, not to the estate.

The instant case is fundamentally different from *Greene*. The district court in *Greene* remanded to the bankruptcy court so it could begin administering the petition. "[T]he entire

---

[4] The district court order, for example, concluded "that the lawsuit in question belongs to the [Wades], and not the estate, and that the [Wades] have standing to pursue the lawsuit."

bankruptcy proceeding remain[ed] before the parties." *Greene*, 835 F.2d at 590. Here, by contrast, there is no remand to the bankruptcy court for further proceedings or factfindings; the bankruptcy case is closed, and there will be no more § 158 appeals. Accordingly, the decision was final under § 158(d), and the majority errs in refusing to address Chase Mortgage's appeal.

## II.

In reviewing an appeal from a bankruptcy court, we apply the same standard as did the district court. *In re Pro-Snax Distribs., Inc.*, 157 F.3d 414, 419-20 (5th Cir. 1998). Whether a cause of action belongs to the debtor individually or is property of the bankruptcy estate is a pure question of law we review *de novo*. *In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997).

The best way to begin the discussion is to understand what this case is *not* about. Chase Mortgage argues that the Wades' state law claims are "really" claims that Chase Mortgage violated the automatic stay under 11 U.S.C. § 362(h)[5]; viola-

---

[5] "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

tions of the automatic stay are always property of the estate; therefore, the Wades' claims are property of the estate. But the Wades have raised only state law claims and repeatedly have confirmed that they do not seek damages for violations of the automatic stay.

Chase Mortgage's brief never asserts that § 362(h) preempts overlapping state law causes of action, and at oral argument Chase Mortgage explicitly repudiated any preemption claim. This court has no authority to rewrite the Wades' state law claims as § 362(h) claims for violations of the automatic stay, and Chase Mortgage's arguments on this point miss the mark.

The Wades devote much of their brief to arguing that because their legal claims accrued after they filed their bankruptcy petition, 11 U.S.C. § 541(a)(1)'s rule that the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" does not apply to their claims. But Chase Mortgage never raises this issue; to the contrary, their brief concedes this point. Chase is left with one remaining argument, that under 11 U.S.C. § 541-(a)(7), the claims belong to the estate.

If Chase Mortgage is correct, and the causes of action belong to the estate, the trustee has exclusive standing to assert them, and the Wades' claims should be dismissed for lack of standing. *See In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994). The fact that the bankruptcy case already may have closed when a claim accrued or was first asserted does not affect the analysis. "Any property not abandoned by the trustee under [11 U.S.C. § 554(a) or (b)] remains part of the estate even after closure of the bankruptcy case." *Correll v. Equifax Check Servs., Inc.*, 234 B.R. 8, 10 (D. Conn. 1997) (citing *In re Drexel Burnham Lambert Group, Inc.*, 160 B.R. 508, 514 (S.D.N.Y. 1993)); 11 U.S.C. § 554(d).

When the Wades' filed their chapter 7 petition on July 31, 1997, an estate was created under 11 U.S.C. § 541, which defines "property of the estate": It lists seven categories; all property claimed by the estate must fit into one of them. Subsection 541(b) then lists exceptions to these seven categories.

Section 541(a)(7) defines property of the estate to include "[a]ny interest in property that the estate acquires after commencement of the case." 11 U.S.C. § 541(a)(7). "[F]or example, if the estate enters into a contract, after the

11

commencement of the case, such a contract would be property of the estate." H.R. REP. No. 103-835, *reprinted in* 1994 U.S.C.C.A.N. 3340 (legislative statements). "Property" under § 541(a)(7) "includ[es] causes of action sounding in tort." *In re Doemling*, 127 B.R. 954, 955 (W.D. Pa. 1991).[6]

Section 541(a)(7) was not added until 1994, and our circuit has yet to define its scope. Other courts interpreting § 541(a)(7) have split into two camps. One reading holds that all property the debtor obtains before the bankruptcy case closesSSwhether he obtains it pre- or post-petitionSSis property of the estate unless a provision of § 541(b) specifically excludes it from the estate. *See*, *e.g.*, *Correll*, 234 B.R. at 10-11; *In re Acton Foodservices Corp.*, 39 B.R. 70, 72 (D. Mass. 1984); *Bostonian v. Liberty Sav. Bank*, 61 Cal. Rptr. 2d 68, 73 (Cal. Ct. App. 1997).[7]

But, this reading contradicts the language and structure of § 541(a). If all debtor property belongs to the estate unless excluded by § 541(b), then § 541(a)(1)'s distinction between pre- and post-petition assets (that only the debtor's

---

[6] *Accord In re O'Dowd*, 233 F.3d 197 (3d Cir. 2000); *Correll*, 234 B.R. at 10-11; *In re Tomaiolo*, 205 B.R. 10 (D. Mass. 1997); *In re Griseuk*, 165 B.R. 956, 958 (M.D. Fla. 1994); *Bostonian v. Liberty Sav. Bank*, 61 Cal. Rptr. 2d 68, 73 (Cal. Ct. App. 1997).

[7] *In re Griseuk*, 165 B.R. at 958, also applied this framework but grounded its holding in the fact that the debtors filed under chapter 11.

interests "at the commencement of the case" belong to the estate) is meaningless. *In re Doemling* sets forth the better reading:

> Section 541(a)(1) specifically limits the property of the estate to the debtor's property interest as they exist when the case is commenced. Section 541(a)(7) does not in any way undermine the goal of establishing a critical time at which to determine which of debtor's property becomes part of the estate. Instead, it focuses on property interests acquired by the estate after the commencement of the case. Obviously, after the commencement of the case, the estate has an existence that is completely separate from that of the debtor. Section 541(a)(7) covers only property that the estate itself acquires after the commencement of the proceeding. Hence, there is absolutely no support for the . . . claim that all the debtor's property, whether obtained pre- or post-petition, is property of the estate unless specifically excluded.

*Id.* at 956; *see also In re O'Dowd*, 233 F.3d 197, 203-04 (3d Cir. 2000); *In re Tomaliolo*, 205 B.R. 10, 16 (D. Mass. 1997); *In re Osborn*, 83 F.3d 433, 1996 WL 196695, at *5 (10th Cir. Apr. 24, 1996) (unpublished) (table).

According to the *Doemling* view, § 541(a)(7) merely preserves the distinction between the debtor and the chapter 7 estate. The debtor and the estate are completely separate entities; all property the debtor acquires belongs to the debtor, and all property the estate acquires belongs to the estate.

As *Doemling* illustrates, the *Correll/Acton/Bostonian* reading often would lead to absurd results. In *Doemling*, five months after she filed for chapter 7 bankruptcy, Doemling was hit by a drunk driver. The court held that her personal injury suit from this accident belonged to the Doemlings:

> The Doemlings acquired whatever property interest they have in that cause of action in their personal capacities. The estate did not acquire this cause of action independent of the Doemlings. Any recovery in this cause of action would be to compensate the Doemlings for injuries to their persons. It would not compensate for any injury to the estate itself. Thus, section 541(a)(7) is inapplicable because . . . it is limited to property acquired post-petition by the estate as opposed to property acquired by the debtors.

*Doemling*, 127 B.R. at 956. Doemling's suit was wholly unrelated to the estate property or any "property that the estate acquires after commencement of the case," 11 U.S.C. § 541(a)(7). Yet, under the rule of *Correll*, *Acton*, and *Bostonian*, it would belong to the estate, because no section of § 541(b) specifically excludes it.[8]

---

[8] *Griseuk*, 165 B.R. at 958, held that a debtor's personal injury claim was property of the estate, so the debtor had no standing to bring it. *Griseuk*, however, was a chapter 11 case, and the court left open the possibility it would reach a different result in a chapter seven suit, explaining that "[i]n contrast to the establishment of two separate estates at the time of an individual debtor filing a Chapter 7 case, only one estate is established at the filing of a typical Chapter 11 case." *Id.* (internal quotation marks omitted).

The Third Circuit applied *Doemling*'s framework in holding

that a debtor's legal malpractice claim against her former

bankruptcy lawyer belonged to the estate.  The court explained

that

> the inquiry often depends on whether the estate or
> the debtor suffers the harm.  Accordingly, only in
> the post-petition situation where the debtor is
> personally injured by the alleged malpractice, while
> the estate is concomitantly not affected, is it
> appropriate to assign the malpractice to the
> debtor. . . .   Here, any alleged malpractice
> resulting from the omission of claims in the Sevak
> Action would affect only the estate, not [the debt-
> or], because it would have reduced the value of the
> Sevak Action, which was property of the estate.

*O'Dowd*, 233 F.3d at 204.

A court in the District of Massachusetts similarly ruled

that a debtor's legal malpractice suit alleging the bankruptcy

attorney wrongly converted the case from chapter 11 to chapter

7, belonged to the estate:

> If the [attorney's] services were deficient with
> respect to the conversion to chapter 7, the estate's
> rights were abridged.  Liquidation under chapter 7
> typically produces less for creditors than does a
> confirmed chapter 11 plan.  To the extent the Debtor
> incurred a resulting loss, so did the creditors, who
> are the estate's prime beneficiaries.  Any loss to
> the Debtor was derivative of the estate's loss.  It
> follows that this claim was acquired by the estate
> under section 541(a)(7).

15

*Tomaiolo*, 205 B.R. at 16.[9]

In an unpublished opinion, the Tenth Circuit also relied on *Doemling* to decide whether a set of legal malpractice claims belonged to the debtors or the estate. *Osborn*, 1996 WL 196695, at *5. The debtors alleged that their attorney failed to claim their home as an exempted homestead and advised them to enter an *in personam* judgment that rendered $225,000 of their debts nondischargeable. *Id*. In holding that the claims against the attorney were property of the debtors, the court explained:

> [The attorney's] negligence caused a $225,000 judgment to be entered against the [debtors] personally. His negligence did not harm the estate. The legal malpractice action seeks to recover for injury to the [debtors] personally, not for injury to the estate, and therefore is more appropriately considered property of the [debtors] than of the estate.

*Id.*

I too would adopt the rule of *Doemling:* When a cause of action arises after the commencement of the bankruptcy estate, we ask whether the claims seek recovery for harm to the estate or to the debtors in their individual capacities. If the harm befalls estate property, the claim is property of the estate; if the harm befalls the debtor's person or personal property,

---

[9] *But see Acton*, 39 B.R. at 72.

16

the claim is property of the debtors. Applying this framework to the Wades, I would conclude that some of their claims belong to the estate and some to the Wades.

The Wades' claim that in March 1998, Chase Mortgage and Chase Bank entered into a conspiracy to transfer funds held for the Mississippi mortgage to pay for insurance on the Indiana property, belongs to the estate. Once the Wades filed on July 31, 1997, they assumed "an identity independent of the bankruptcy estate." *Doemling*, 127 B.R. at 955. This claim affects the value of the mortgages, both of which became property of the estate under § 541(a)(1); it does not affect the value of the Wades' personal property. Even though the Wades allege that this mismanagement harmed them, any loss to them is derivative of loss to the estate. *Tomaiolo*, 205 B.R. at 16.

The Wades also claim that Chase Mortgage wrongly charged them for attorney's fees. This would be a personal debt, *see In re Brannan*, 40 B.R. 20, 23-24 (N.D. Ga. 1984), not an estate debt. Because this debt must be paid from the Wades' personal property, not from estate property, the claim belongs to the Wades. If they are suing for personal hardships caused by Chase Mortgage's harassment (e.g., personal time spent

17

answering these harassing letters), these claims also belong to them.  Like the car accident in *Doemling*, any harassment that occurred after the Wades filed their chapter 7 petition affected them in their personal capacity.  It did not reduce the value of any estate asset.

Finally, any claim the Wades bring to recover their lump sum payment of $3,032.68, belongs to them.  The alleged contract is confusingSSit involves mortgages that had already been assigned to the estateSSand some of the Wades' claims concerning it may be moot.[10]  But the merits of the Wades' state law claims are not before us, only the question of who owns them.  Because the Wades entered this contract after they filed for bankruptcy, the contract rights and debts they incurred belong to them.  *See id.*  Accordingly, any suit to recover these personal rights and debts belong to them as well.

For these reasons, I would affirm the district court with regard to the claims of collusion and breach of fiduciary duties by Chase Mortgage and Chase Bank, and reverse with regard to the remaining claims.  Unfortunately, the majority fails to address these claims.  I respectfully dissent.

---

[10] The Wades initially listed their Mississippi mortgage for reaffirmation, but the bankruptcy court granted discharge before the reaffirmation was administered.  Thus, Wades' claim that Chase Mortgage failed to send a letter reaffirming the debt is likely moot.