In re Ronald RICCITELLI, Debtor.

Debora Casey, Chapter 7
Trustee, Plaintiff,

v.

Thomas Grasso, Defendant.

Bankruptcy No. 02–10032–RS.
Adversary No. 04–1300.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 7, 2005.

484

Sara Discepolo, Boston, MA, for Defendant.

Marshall Newman, Boston, MA, for Plaintiff.

Michael Betcher, Lexington, MA, for Debtor's Probate Estate.

### MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

ROBERT SOMMA, Bankruptcy Judge.

By her complaint in this adversary proceeding, the Chapter 7 Trustee seeks to liquidate the Debtor's cause of action against his bankruptcy attorney for malpractice: the attorney allegedly failed to file the Debtor's declaration of homestead before filing the Debtor's Chapter 7 petition, resulting in loss to the Debtor of the value of his Massachusetts homestead exemption under G.L. c. 188, § 1. The Defendant attorney now seeks dismissal of the adversary proceeding on the basis that the Trustee lacks standing to prosecute it; she lacks standing, he argues, because the cause of action accrued only upon the filing of the bankruptcy petition and therefore is not an asset of the bankruptcy estate. For the reasons set forth below, the Court agrees and, accordingly, will dismiss the adversary proceeding for failure to state a claim on which relief can be granted.

### PROCEDURAL HISTORY

On January 2, 2002, Ronald Riccitelli ("the Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code. Debora Casey was appointed Chapter 7 trustee. With his petition, the Debtor filed a schedule of property claimed as exempt (Schedule C), in which he elected the exemptions available to him under 11 U.S.C. § 522(b)(2). Among the assets he claimed as exempt was his interest in the real property located at 565 Arcade Avenue, Seekonk, Massachusetts. He claimed this property as exempt under the Massachusetts homestead statute, G.L. c. 188, § 1, to the extent of $40,865.00.

Shortly after the first meeting of creditors, the Debtor moved to convert his case to one under Chapter 13, and the motion was allowed as of right. However, after some time in Chapter 13,[1] the Debtor moved to convert the case back to Chapter 7, and, on September 26, 2002, the Court allowed the motion. Debora Casey was again appointed Chapter 7 trustee. Ms. Casey ("the Trustee") objected to the Debtor's claim of exemption as to the real

---

1. During his time in Chapter 13, the Debtor did not file a Chapter 13 plan. Rather, he moved unsuccessfully to have the case dismissed; the Court denied the motion as contrary to the best interest of the estate.

property, contending that the homestead exemption was unavailable to the Debtor because he had not filed a declaration of homestead. After a hearing, the Court agreed and sustained the objection. The Trustee then moved for authority to sell the property, the Court allowed the motion, and the Trustee did sell the property.

On September 22, 2004, the Trustee filed the complaint commencing this adversary proceeding. The Defendant is Thomas A. Grasso, the attorney who filed the Chapter 7 petition for the Debtor; the Debtor himself is not a party to the adversary proceeding.[2] The complaint seeks recovery of damages sustained by the Debtor as a result of Grasso's alleged legal malpractice: in failing to file a declaration of homestead on behalf of the Debtor before the bankruptcy filing, and in failing to ascertain before the bankruptcy filing that no declaration of homestead had been filed by or on behalf of the Debtor.

The Defendant responded to the complaint by filing the present motion to dismiss. The motion seeks dismissal of the complaint on two grounds: under FED. R. CIV. P. 12(b)(1), for lack of subject matter jurisdiction; and under FED. R. CIV. P. 12(b)(6), for failure to state a claim on which relief can be granted. Both are founded on the same underlying argument: that, on the facts alleged, the malpractice action belongs to the Debtor and not to the bankruptcy estate as constituted in § 541(a) of the Bankruptcy Code; and, by virtue of the Trustee's lack of standing, the Court lacks subject matter jurisdiction to adjudicate this dispute, standing being a constitutional prerequisite to the Court's exercise of subject matter jurisdiction.

The Trustee responds that, on the facts alleged in her complaint, the malpractice action accrued prepetition and therefore became an asset of the estate under § 541(a)(1), which, in relevant part, brings into the estate "all legal ... interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). The Trustee does not dispute that, should this Court determine that, given the alleged facts, the malpractice claim cannot be an asset of the bankruptcy estate, she would lack standing to prosecute the claim, and the Court would lack jurisdiction to adjudicate it.

### FACTS

For purposes of the motion to dismiss for lack of subject matter jurisdiction, the Court must accept the facts alleged as true. In relevant part, the complaint alleges the following facts.

Defendant Thomas Grasso is an attorney who held himself out to the public as knowledgeable in bankruptcy matters. The Debtor consulted with Grasso about his financial problems and employed Grasso to represent him in the filing of a bankruptcy case. At the time of the bankruptcy filing, the Debtor owned certain real estate ("the Property") in which he had equity of approximately $50,000. Grasso counseled the Debtor to elect pursuant to 11 U.S.C. § 522(b)(2) the exemptions available to him under state law. Following this advice, the Debtor elected the exemptions available under Massachusetts law in order to take advantage of the so-called Massachusetts homestead exemption in G.L. c. 188, § 1. Under G.L. c. 188, §§ 1 and 2, if, prior to the commencement

---

**2.** In fact, from pleadings filed in this case (but not in this adversary proceeding), it appears that the Debtor has died. See Motion of Thomas Grasso to Withdraw as Attorney, file November 8, 2004, at ¶ 7. The same pleading suggests that a representative of his probate estate has been appointed; but no such representative has filed an appearance in this case or been joined as a party to this adversary proceeding.

of a bankruptcy case, a declaration of homestead has been recorded in the Registry of Deeds for the Registry District in which the real estate is situated, the Debtor's equity in the real estate up to a value of $300,000 [3] is exempt from the claims of creditors made in the bankruptcy case (subject to certain exceptions not here relevant). Grasso filed the Debtor's Chapter 7 petition on January 2, 2002. The Defendant failed to record on behalf of the Debtor a declaration of homestead in the appropriate Registry of Deeds prior to the commencement of the bankruptcy case, and he failed to ascertain that no declaration of homestead with respect to the Property had been filed previously by or on behalf of the Debtor. By neglecting to record a homestead declaration and neglecting to ascertain that one had not previously been filed, Grasso failed to exercise reasonable care in his representation of the Debtor.

The Trustee objected to the claimed homestead exemption, and the exemption was disallowed. As a result, the Trustee sold the Property. After satisfaction of encumbrances of record and payment of closing expenses, there remains in the hands of the Chapter 7 Trustee net proceeds in the approximate sum of $33,000.[4] Because of Grasso's negligence, these proceeds are available to satisfy claims made in the bankruptcy case. Had Grasso used reasonable care in representing the Debtor, the Trustee would not have sold the Property, and, if she had sold it, the Debtor's equity in the property would have been exempt from the claims of creditors. The Debtor sustained damage as a proximate result of Grasso's negligence.

## ARGUMENTS OF THE PARTIES

Section 541(a)(1) of the Bankruptcy Code specifies that the bankruptcy estate includes "all legal or equitable interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). The Trustee relies on this subsection of § 541(a), and only this subsection, for her position that the malpractice claim is an asset of the estate. The parties agree that the cause of action for legal malpractice became an asset of the Debtor.[5] They disagree only as to when.

The Trustee maintains that this cause of action accrued before the filing of the bankruptcy petition. In support of this position, she relies on two considerations that she maintains are relevant under state law.[6] First, the acts of negligence—Grasso's failure to file a homestead exemption and his failure to ascertain that one had not already been filed by or on behalf of the Debtor—necessarily occurred before the filing of the petition. Second, the Debtor knew or reasonably should known of the facts constituting the malpractice

---

3. By amendment that became effective on October 26, 2004, the Massachusetts homestead statute now permits exemption of up to $500,000 of the value of the homestead. G.L. c. 188, § 1 (as amended by St. 2004, c. 218, § 1).

4. After the commencement of this adversary proceeding, the Trustee moved for authority to distribute the proceeds to administrative and prepetition creditors. No objection having been filed, the Court allowed the motion. It is not clear whether the Trustee has distributed the proceeds.

5. They further agree that a cause of action is among the kinds of property that may enter the estate under § 541(a)(1).

6. The parties agree that the question of whether a particular asset is property of the estate is a question of federal law, but also that, in determining the extent of a debtor's interest in property, the Court must be guided by state law. They further agree that the relevant state law is that of Massachusetts.

before the filing of the petition. Under Massachusetts law, the Trustee contends, a claim for legal malpractice is deemed to have accrued when the client knew, or had reason to know, of the attorney's error. Moreover, even if the malpractice claim had not "accrued" under state law at the time of the filing, it nonetheless was sufficiently in existence at that time—because the Debtor had sufficient cause to be suspicious of the failure to record—to be deemed property of the estate.[7]

In response, Grasso contends that the malpractice claim accrued postpetition. The alleged negligence consists of Grasso's having filed the bankruptcy petition without having first filed a declaration of homestead. Therefore, the alleged negligence could not have occurred prior to the filing of the petition; the harm was done precisely upon the filing of the petition. Moreover, Grasso argues, insofar as notice of harm is relevant, the Debtor, being a lay person, could not have known of harm before the filing and should not be charged with knowledge of law sufficient to understand the impending misstep and consequent loss to himself and accrual of a legal malpractice claim. The Debtor should be deemed to have learned of the harm only when the Trustee challenged the home-

stead and it then became clear that the equity in the homestead was unprotected or at least subject to challenge. Also, Grasso argues that the malpractice claim should be deemed an asset of the Debtor and not of the estate for the further reason that it seeks redress for harm to the Debtor, not to the estate.[8]

## JURISDICTION

This motion (as opposed to the adversary proceeding as a whole) is a proceeding (1) to determine whether the court has subject matter jurisdiction over the adversary proceeding and (2) to determine whether claims belonging to the Debtor are assets of the bankruptcy estate under 11 U.S.C. § 541(a). In both respects, this motion is a core proceeding, and therefore, as the parties agree, this Court has jurisdiction to hear and determine the motion to dismiss and to enter an appropriate and final order on it. 28 U.S.C. § 157(b)(1). This ruling pertains only to the present motion; the Court's subject matter jurisdiction over the adversary complaint is addressed below.

## DISCUSSION

### a. *Governing Standard*

The Trustee's motion seeks dismissal both under FED. R. CIV. P. 12(b)(1), for lack

---

7. At the hearing on this motion, Trustee's counsel also brought to the Court's attention a recent decision by Chief Judge Joan Feeney. In *Jackson v. Marlette (In re Jackson)*, 317 B.R. 573 (Bankr.D.Mass.2004), Judge Feeney held that the debtors' malpractice claim against their bankruptcy attorney—for failing to advise them to record a homestead declaration—was property of the Chapter 13 estate. Trustee's counsel did not explain the relevance of this decision to the case at hand. The Court finds that Judge Feeney's decision is irrelevant to the present matter because a Chapter 13 estate includes, in addition to the interests in property enumerated in § 541(a) of the Bankruptcy Code, those added by § 1306(a), including property of the kind specified in § 541(a) "that the debtor acquires after the commencement of the case." 11

U.S.C. § 1306(a)(1). As Judge Feeney herself observed, § 1306(a) made it unnecessary to determine whether the malpractice claim arose prepetition or postpetition.

8. In the alternative, Grasso argues that, because the legal malpractice claim seeks damages for the loss of the value of an exemption, the malpractice claim essentially replaces the homestead exemption and should, like the underlying equity in the home, be deemed exempt (as opposed to excluded from the estate). Because the Court concludes that the malpractice claim is not an asset of the estate, this argument is moot—under 11 U.S.C. § 522(b), only property of the estate may be claimed as exempt—and therefore the Court need not and does not address it.

488

of subject matter jurisdiction, and under FED. R. CIV. P. 12(b)(6), for failure to state a claim on which relief can be granted. "When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Northeast Erectors Ass'n of BTEA v. Secretary of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir.1995). In this instance, however, the inquiries under Rules 12(b)(1) and 12(b)(6) are one and the same, both challenging the standing necessary to establish subject matter jurisdiction; and the standards for determining them are virtually identical, especially because subject matter jurisdiction is being challenged at the pleading stage of the case.

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Stated otherwise, the Court may dismiss "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990). For purposes of this analysis, the Court

must "take the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 17 (1st Cir.1992). A motion to dismiss for lack of subject matter jurisdiction, when presented at the pleading stage, should likewise be denied—or at least put over for taking of evidence on the jurisdictional question—if the Plaintiff has asserted even a colorable claim within the jurisdiction of the court.[9] Accordingly, the Court will accept the allegations of the complaint as true, indulge all inferences in favor of the Plaintiff, and determine whether, on the facts so construed, or any set of facts the Plaintiff might prove in support thereof, the Debtor's malpractice claim would be an asset of the bankruptcy estate.

**b.  Section 541(a)(1) and Debtors' Causes of Action**

■ As the parties agree, this Court must decide whether the claim that the Trustee now seeks to prosecute was an "interest of the Debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). And, as the parties further agree, an unliquidated claim or cause of action is an "interest in property" for purposes of § 541(a)(1).[10] The claims

9. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 364 (1st Cir.2001) ("the district court disposes of a Rule 12(b)(1) sufficiency challenge on the basis of the plaintiff's version of the relevant events, taking the well-pleaded facts as true and drawing all reasonable inferences in favor of the pleader"; if there is a factual challenge to the jurisdictional facts alleged in the complaint, "the court enjoys broad authority to ... consider extrinsic evidence and hold evidentiary hearings in order to determine its own jurisdiction."); *Muniz–Rivera v. United States*, 326 F.3d 8, 11 (1st Cir.2003) ("At the pleading stage, a court may dismiss a claim under Rule 12(b)(1) only when the facts alleged in the complaint, taken

as true, do not justify the exercise of subject matter jurisdiction.").

10. *Howe v. Richardson*, 232 B.R. 534, 537 (1st Cir. BAP 1999) ("Under § 541(a)(1) of the Bankruptcy Code, property of the estate includes choses in action, even if contingent and unliquidated and thus not subject to attachment under state law."); *Louisiana World Exposition v. Federal Insurance Company*, 858 F.2d 233, 245 (5th Cir.1988) ("Section 541(a)(1)'s reference to 'all legal or equitable interests of the debtor in property' includes causes of action belonging to the debtor at the time the case is commenced"); *In re Swift*, 198 B.R. 927, 930 (Bankr.W.D.Tex.1996) ("a cause of action belonging to a debtor as of the

at issue arise and are asserted under the law of Massachusetts, so the Court looks to Massachusetts law to determine whether and to what extent the claims at issue existed as of the commencement of the case. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). But the ultimate issue—whether a particular claim was "an interest of the debtor in property as of the commencement of the case" within the meaning of § 541(a)(1)—is a matter of federal bankruptcy law and, more specifically, of understanding the intended scope of § 541(a)(1).[11]

The Bankruptcy Code does not indicate how a court should determine whether a claim is sufficiently matured as of the commencement of the case to constitute an "interest of the debtor in property." Nor does the legislative history of § 541(a) ad-

dress the issue. Therefore, the Court will be guided on the issue by the Supreme Court's decision in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) ("*Segal*"), less because the legislative record indicates that Congress intended in § 541(a)(1) to follow its result [12] than because it remains the leading decision on whether and when an inchoate claim constitutes "property" of the debtor as of the date of the bankruptcy filing (and therefore an asset of the bankruptcy estate). In *Segal*, the Supreme Court construed the term "property" as it appeared in § 70a(5) of the former Bankruptcy Act, the predecessor to the current § 541(a)(1).[13] The principles it articulated should be followed in construing the term property as it has been carried forward into the current statute.

In *In re Tomaiolo*, 205 B.R. 10 (Bankr. D.Mass.1997), *aff'd* 2002 WL 226133

---

petition's filing becomes property of the estate"). The legislative history of § 541(a)(1) is clear on this issue. The House and Senate reports on the language that became § 541(a)(1) make clear that this subsection was intended to bring the debtor's claims and causes of action into the estate. See House Report No. 95–595, 95th Cong., 1st Sess. 367–8 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6322–24, 5787, 5868–69 ("The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action, . . . .").

11. Although the Bankruptcy Code defines the term "claim," see 11 U.S.C. § 101(5), that definition does not inform this inquiry. "Claim" does not appear in § 541(a)(1), and its definition in § 101(5) is for purposes of delimiting the universe of valid claims *against* the estate. It is not intended to identify those of a debtor's claims that are assets of the estate under § 541(a)(1). This is not to say that, insofar as claims are concerned, §§ 541(a)(1) and 101(5) are not coextensive; it is only to say that § 101(5) does not govern the issue.

12. The House and Senate reports on the language that became § 541(a)(1) state that "[t]he result of *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), is followed, and the right to a refund is property of the estate." House Report No. 95–595, 95th Cong., 1st Sess. 367–8 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6322–24, 5787, 5868–69.

13. In relevant part, that section provided: "(a) The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . ." 30 Stat. 565, as amended, 11 U.S.C. § 110(a)(5) (1964 ed.).

(D.Mass.2002), Judge Queenan nicely summarized the facts in *Segal:*

> The question there was whether a claim for tax refunds which was applied for and received postpetition was property of the bankruptcy estate. The refunds were the result of carrying back, to income of prior years, losses which were sustained during the calendar year of bankruptcy and prior to the filing. Federal tax law permitted the claim to be made only after the calendar year had closed, which occurred after the bankruptcy filing. At the time of the filing, it was possible that the claim would be increased or decreased by losses incurred or income earned during the balance of the calendar year. Thus no claim had accrued at the time of the bankruptcy filing. The debtors therefore contended their prepetition rights in the claim were too tenuous to be considered property interests passing to the bankruptcy estate at the filing.

*In re Tomaiolo,* 205 B.R. at 14. The Supreme Court framed the relevant considerations as follows:

> We turn first to the question whether on the date the bankruptcy petitions were filed, the potential claims for loss-carryback refunds constituted 'property' as § 70a(5) employs that term. Admittedly, in interpreting this section '[i]t is impossible to give any categorical definition to the word "property," nor can we attach to it in certain relations the limitations which would be attached to it in others.' ... Whether an item is classed as 'property' by the Fifth Amendment's Just–Compensation Clause or for purposes of a state taxing statute cannot decide hard cases under the Bankruptcy Act, whose own purposes must ultimately govern.
>
> The main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. [Citations omitted.] However, limitations on the term do grow out of other purposes of the Act; one purpose which is highly prominent and is relevant in this case is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future. Accordingly, future wages of the bankrupt do not constitute 'property' at the time of bankruptcy nor, analogously, does an intended bequest to him or a promised gift—even though state law might permit all of these to be alienated in advance.... Turning to the loss-carryback refund claim in this case, *we believe it is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5).*

*Segal v. Rochelle,* 382 U.S. at 379–380, 86 S.Ct. 511 (emphasis added).

 The last sentence well summarizes the Supreme Court's analysis. In determining whether a claim is sufficiently developed as of the petition date to constitute property of the debtor for purposes of inclusion or exclusion from the bankruptcy estate, the Court employs what is essentially a three-step process: (1) determine the extent to which the claim is rooted in the prebankruptcy past; (2) determine the extent to which it is entangled with the debtor's ability to make an unencumbered fresh start; and then (3) with both considerations in the balance, determine whether, in view of the purposes of the Bankruptcy Act (now the Bankruptcy Code), the claim is more properly categorized as

prepetition property that should come into the estate or a postpetition asset that the Debtor should take free of the claims of prebankruptcy creditors. I agree with Judge Queenan that this analysis does not turn on whether, under state law, the claim had accrued as of the petition date. *In re Tomaiolo*, 205 B.R. at 15.[14] The extent of a claim's accrual as of the petition date is relevant to determining the extent of its prepetition roots, but it is not the only factor and not necessarily a dispositive one. Nor will a claim be deemed property of the estate just because it has prepetition roots. *Segal* requires not just *some* prepetition roots, however attenuated, but that the cause of action be "*sufficiently* rooted in the prebankruptcy past." *Segal v. Rochelle*, 382 U.S. at 379–380, 86 S.Ct. 511 (emphasis added).

c. *The Malpractice Claim*

■ With this prescribed analysis, the Court turns to the facts of the present complaint. Mr. Grasso is alleged to have been negligent in two respects: by failing to file a declaration of homestead on behalf of the Debtor before the filing of the bankruptcy petition; and by failing to ascertain before the bankruptcy filing that no declaration of homestead had already been filed. As the Trustee points out, some of

the operative conduct—the failure to record and the failure to ascertain—occurred prepetition, and therefore the claim does have prepetition roots. On the other side of the balance, however, are four considerations that tip the balance in favor of the conclusion that this claim is property of the Debtor, not of the estate.

■ First, Mr. Grasso's alleged negligence did not *cause* harm—make it all but inevitable—until he filed the bankruptcy petition. This was the fateful act, and it did not occur prepetition. His negligence lay precisely in his having *filed the petition* without first having filed a declaration of homestead (or having ascertained that such a filing was necessary). In Massachusetts as elsewhere, a claim for negligence requires, in addition to a duty of care and breach thereof, both causation and harm.[15] Here, the harm was caused when the bankruptcy petition was filed; it was the bankruptcy filing itself that effectively closed the door, making it impossible for the Debtor to have first filed a declaration of homestead, with the consequence that the Court sustained the Trustee's objection to the homestead exemption for failure to have recorded prepetition.[16]

Second, the harm caused by the negligence was suffered by the Debtor entirely

14. In *Tomaiolo*, Judge Queenan ruled that a Debtor's malpractice claims against his bankruptcy attorney were property of the estate under § 541(a)(1). Following *Segal*, Judge Queenan reasoned that the claims were " 'sufficiently rooted in the prebankruptcy past' to be includible in the bankruptcy estate." *In re Tomaiolo*, 205 B.R. at 15.

15. *Atlas Tack Corp. v. Donabed*, 47 Mass.App. Ct. 221, 226, 712 N.E.2d 617, 621 (1999) ("When asserting a claim for legal malpractice, a plaintiff bears the burden of proving that its attorney committed a breach of the duty to use reasonable care, that the plaintiff suffered actual loss, and that the attorney's negligence proximately caused such loss.").

16. A failure to file a declaration of homestead can have adverse consequences even before bankruptcy or when no bankruptcy is filed: the exemption would be unavailable with respect to debts contracted before the declaration was filed. Here, however, the cause of action on which the Trustee is suing focuses entirely on the harm suffered by the Debtor *in his bankruptcy case:* for failure of the Debtor to record a declaration of homestead before he filed his bankruptcy petition, the Court ruled that the Debtor could not claim the equity in his home as exempt in the bankruptcy case. This Court makes no ruling and expresses no opinion as to the merits of the Debtor's claim against Grasso.

postpetition. Only postpetition could he have claimed the homestead exemption in bankruptcy and enjoyed the benefits of it. Only postpetition did he suffer the sale of his home and the loss of what would otherwise have been his protected equity. For both of these reasons—causation on the date of the filing and damages exclusively postpetition—the claim cannot be deemed to have accrued prepetition.[17] Significant events occurred in the bankruptcy filing itself and in its aftermath.

Third, the harm caused by these actions concerned a portion of the relief the Debtor sought in bankruptcy, his right in bankruptcy to exempt the equity in his home from the bankruptcy estate pursuant to 11 U.S.C. § 522(b)(2) and thus from the reach of his creditors. The harm he suffered was deprivation of his bankruptcy relief, a compromise of the fresh start that bankruptcy was intended to afford him. The harm for which this complaint seeks redress is thus very much entangled with the Debtor's ability to make an unencumbered fresh start.

Fourth, the right lost by counsel's alleged negligence—to wit, the right to exempt equity from his bankruptcy estate and hence from the reach of his creditors—for which the present claim seeks redress, was one that the Bankruptcy Code gave the Debtor *as against the estate.* To take this claim from him and give it the estate would be to give the estate an asset (the value of the exemption) to which, but for the alleged negligence in the filing of the bankruptcy case, it would nev-

er have had a right. Moreover, by virtue of counsel's negligence, the estate has already received the value of the lost exemption. Treating this claim as an asset of the estate would be tantamount to giving the remedy to the party that derived a windfall from counsel's negligence instead of to the party that was harmed by it, taking the benefit of the exemption from the Debtor a second time. It would also effectively deny to the Debtor the possibility of any remedy for counsel's negligence.[18]

In summary, the prepetition roots of this claim, shallow to begin with, are overwhelmed by significant postpetition events in the accrual of the claim and especially by the relation of the claim to the Debtor's fresh start. Accepting the facts in the complaint as true, and indulging all inferences in favor of the Trustee, the conclusion is inescapable that this claim is a postpetition asset that the Debtor should take free of the claims of prebankruptcy creditors. Accordingly, the Trustee lacks standing to prosecute it, and the complaint must be dismissed for lack of subject matter jurisdiction. A separate order of dismissal will enter accordingly.

17. In reaching this conclusion, the Court attributes no relevance to the date on which the Debtor became aware of counsel's negligence. His awareness of the claim might be relevant to the statute of limitations but not to the accrual of the claim itself and not to the present inquiry.

18. The Court is not here endorsing Grasso's argument that the claim should be deemed the Debtor's because it seeks redress for harm to the Debtor and not to the estate. Many a prepetition claim for harm to debtors would nonetheless become estate assets under § 541(a)(1). The point here is narrower: that the harm in question is to a right of the Debtor *as against* the estate.