In re Robert A. HOLSTEIN, Debtor.

Robert A. Holstein, Plaintiff,

v.

Alexander S. Knopfler, Trustee of the Estate of Robert A. Holstein, Defendant.

Bankruptcy No. 00 B 18138.
Adversary No. 04 A 3074.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 2, 2005.

**230**

Harold Moskowitz, Chicago, IL, for Robert A. Holstein.

Scott N. Schreiber, James E. Morgan, William S. Hackney, Much Shelist Freed Denenberg Ament & Rubenstein, P.C., Chicago, IL, for Alexander S. Knopfler, Trustee.

## MEMORANDUM OPINION

A. BENJAMIN GOLDGAR,
Bankruptcy Judge.

This is the latest chapter in the "seemingly endless bankruptcy" of Chicago lawyer Robert A. Holstein. *Bank One v. Knopfler (In re Holstein)*, Nos. 00 B 18138, 03 A 638, 2004 WL 26516, at *2 (Bankr.N.D.Ill. Jan. 5, 2004). In September 2003, Holstein was denied a discharge. Some months later, Holstein brought an action in the Circuit Court of Cook County, Illinois against his former bankruptcy lawyers, alleging that their malpractice in the handling of his bankruptcy case led to the denial of discharge.

Believing that the malpractice action was property of Holstein's bankruptcy estate, trustee Alexander S. Knopfler began negotiating a settlement directly with the defendants in the action. This prompted Holstein in July 2004 to file an adversary complaint against Knopfler. The complaint is in three counts. The first seeks a declaratory judgment that the malpractice action belongs to Holstein, either because it is not property of his bankruptcy estate under 11 U.S.C. § 541 or because Knopfler sold it to Holstein in a court-approved sale. The second requests a preliminary injunction to stop Knopfler from meddling with the malpractice action. The third is a claim for breach of an alleged agreement to sell the action to Holstein.

Knopfler consented to stay out of the malpractice action while the parties litigated who owns it. At the court's invitation, Holstein and Knopfler filed cross-motions for summary judgment on the declaratory judgment count, submitting a joint stipulation of facts.

The motions are now fully briefed and ready for decision. For the reasons that follow, the court concludes that Holstein's malpractice action is not property of his bankruptcy estate. Holstein's motion for summary judgment on Count I will therefore be granted, and Knopfler's motion will be denied. The remaining counts of Holstein's complaint will be dismissed as moot.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and (e) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2). *See Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 617 (9th Cir.1993) (noting that determinations of "the nature and extent of the bankruptcy estate" are core); *Koken v. Reliance Group Holdings, Inc. (In re Reliance Group Holdings, Inc.)*, 273 B.R. 374, 394–95 (Bankr.E.D.Pa.2002) (noting that matters requiring a declaration whether property is "property of the estate" are core). The court may therefore enter a final judgment. *In re Smith*, 848 F.2d 813, 816 (7th Cir.1988).

## 2. Facts

The following facts are taken from the pleadings and the parties' joint stipulation. Since the complaint, answer, and stipulated facts tend to begin *in medias res,* a fair amount of background information, all of it indisputable, is drawn from past opinions in this case and in related bankruptcy cases.[1]

Debtor Robert A. Holstein was a partner in Holstein, Mack & Klein ("HMK"), a Chicago law firm engaged primarily in plaintiffs' personal injury litigation, including class actions. In the mid–1990s, HMK represented, among others, 2,500 plaintiffs in several product liability class actions involving the "Norplant" contraceptive device. The Circuit Court of Cook County, Illinois had certified a class in one such action, and federal multidistrict litigation concerning the device was pending in a district court in Texas.

The Norplant litigation proved expensive for HMK: by June 1995, the firm's investment in the litigation had reached $3 million. Around that time, HMK partners therefore approached another Chicago law firm, Jeffrey M. Goldberg & Associates, Ltd. ("Goldberg"), about serving as co-counsel in the litigation. Concluding both that the prospects of prevailing in the litigation were good and that HMK was financially sound, Goldberg entered into a co-counsel agreement with HMK. Under the agreement, Goldberg would pay HMK $1 million, as well as a capped percentage of future litigation costs, receiving in return a percentage of all costs and fees HMK recovered in the litigation.

At the same time HMK was securing Goldberg's assistance in its Norplant cases, HMK was also obtaining additional operating capital from its long-time lender. American National Bank & Trust Company of Chicago, now known as Bank One, N.A. (the "Bank"), had been providing HMK with operating capital since 1989. In 1995, the Bank made additional loans of $1.7 million to the firm, receiving in return promissory notes and a security interest in all of the firm's assets. Holstein and two other HMK partners personally guaranteed the notes.

Shortly thereafter, everything began to unravel-both for HMK and for Holstein. Not as sound financially as Goldberg had believed, HMK defaulted on its obligations to the Bank, and the Bank terminated the firm's line of credit. In May 1996, the Bank brought actions in the circuit court against HMK on the promissory notes and against Holstein personally on his guarantee. The Norplant litigation was not going well either. In September 1996, the class was decertified in the state court action, and there were setbacks in the federal action as well. Ultimately, none of the Norplant actions was successful. Goldberg never recovered its substantial investment in the litigation.

In November 1996, HMK dissolved. Two months later, the Bank entered into a settlement agreement with HMK, Holstein, and others under which the Bank's collection actions were stayed while the firm and its partners attempted to repay the debt. But Holstein *et al.* were unable to make a go of the settlement agreement, and they defaulted on their obligations. In September 1997, a former HMK partner filed an involuntary chapter 7 petition against the firm, placing it in bankruptcy.

---

**1.** *See, e.g., American Nat'l Bank & Trust Co. v. Robert A. Holstein & Assocs., P.C. (In re Holstein Mack & Klein),* 232 F.3d 611 (7th Cir. 2000); *Bank One v. Knopfler (In re Holstein),* Nos. 00 B 18138, 03 A 638, 2004 WL 26516 (Bankr.N.D.Ill. Jan. 5, 2004); *Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein),* 299 B.R. 211 (Bankr.N.D.Ill.2003), *aff'd,* No. 03 A 8023, 2004 WL 2075442 (N.D.Ill. Aug. 31, 2004).

With the settlement agreement out of the picture, the Bank also proceeded to seek a default judgment in the now-consolidated circuit court actions. In October 1998, the circuit court entered a judgment for $748,006 in favor of the Bank and against Holstein. Holstein did not appeal.

Two months later, the Bank began efforts to collect its judgment from Holstein. These efforts turned up certain partnership interests that Holstein claimed to have transferred to Barbara Stackler, a lawyer with whom he had been romantically involved. Doubting Holstein's claim that the interests had really been transferred, the Bank moved for their turnover. At the circuit court's request, the Bank filed a separate complaint for turnover, and the complaint was set for trial.

On June 19, 2000, two days before trial on the Bank's turnover complaint, Holstein filed his own bankruptcy petition seeking relief under chapter 7. Barry A. Chatz, James A. Chatz, Miriam R. Stein, and the firm of Kamensky & Rubenstein represented Holstein and prepared the petition on his behalf. Alexander Knopfler was appointed chapter 7 trustee.

The Bank obtained relief from the automatic stay, and the turnover complaint went to trial in August 2000. Holstein testified but was not otherwise represented by counsel at trial. In October 2000, the circuit court entered an extensive order, making findings and ruling in favor of the Bank. The circuit court found that Holstein's transfers of assets to Stackler were a fraudulent effort—"an elaborate hoax"—to shield his assets from his creditors. Again, Holstein did not appeal.

Meanwhile, Goldberg had filed an adversary complaint against Holstein in the bankruptcy objecting to Holstein's discharge under section 727 of the Bankruptcy Code or alternatively objecting under section 523 to the dischargeability of his debt to Goldberg. One of the section 727 claims alleged that within a year of the bankruptcy Holstein had concealed assets, intending to hinder, delay, or defraud creditors in violation of section 727(a)(2)(A).

The initial complaint was dismissed in part on Holstein's motion, see *Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein)*, 272 B.R. 463 (Bankr.N.D.Ill. 2001), but an amended complaint was filed, and Holstein's motion to dismiss the amended complaint was denied. Several months later, Goldberg moved for summary judgment on the section 727 claims in the complaint. Holstein cross-moved for summary judgment on all of the complaint's counts.

On September 24, 2003, this court awarded Goldberg summary judgment and denied Holstein a discharge under section 727(a)(2)(A). See *Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Robert A. Holstein)*, 299 B.R. 211 (Bankr.N.D.Ill. 2003). Based largely on the collateral estoppel effect of the circuit court judgment in the turnover matter, the court found that Holstein had indeed concealed assets—the partnership interests at issue in the circuit court—with an intent to defraud his creditors. *Id.* Holstein sought review in the district court, but the district court affirmed the decision. See *Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein*, No. 03 C 8023, 2004 WL 2075442 (N.D.Ill. Aug. 31, 2004).[2]

---

**2.** Holstein appealed the district court's decision to the court of appeals. In January 2005, however, Holstein voluntarily dismissed his appeal. The parties here agree that the dismissal of Holstein's appeal does not render moot either the malpractice action or this adversary proceeding.

His discharge denied, on May 10, 2004, Holstein filed a legal malpractice action in the circuit court against the Chatzes, Stein, the Kamensky firm, and the firm of Arnstein & Lehr (where the Chatzes and Stein currently practice). Styled *Robert A. Holstein v. Barry A. Chatz, et al.,* No. 04 L 5271, the complaint alleges that Holstein began consulting Barry Chatz about his financial problems in 1997, and that over the next three years the two had periodic meetings and telephone calls to monitor Holstein's financial situation. Among other things, Barry Chatz was aware of the Bank's turnover complaint, and he and Holstein discussed the scope of the turnover litigation.

Holstein alleges in the complaint that he met with the Chatzes and Stein in early 2000 to review his assets and liabilities for the purpose of preparing his chapter 7 petition. Barry Chatz (or others at his direction) then prepared the petition and supporting schedules. Holstein signed the petition and schedules, which were filed in June 2000.

Some months later, when the circuit court issued its decision on the Bank's turnover complaint, Holstein alleges he immediately forwarded the decision to the Chatzes. He also contacted Barry Chatz, questioning whether the petition and schedules should be amended in light of the decision. Chatz assured him that nothing more needed to be done, that everything had been properly scheduled.

Then the Goldberg adversary was filed. The Chatzes and Stein represented Holstein in connection with the adversary only until Goldberg sought summary judgment. At that point, Holstein says, the Chatzes and Stein moved from the Kamensky firm to the Arnstein firm. Holstein had no idea his counsel had moved until the Kamensky firm notified him the Chatzes were no longer there. After several unsuccessful attempts, Holstein reached Barry Chatz, who told him that the Chatzes could not continue to represent him. Although no motion to withdraw as counsel was ever filed, the Chatzes ceased their participation in the bankruptcy, and Holstein was forced to retain new counsel to deal with Goldberg's summary judgment motion.

According to Holstein, the Chatzes, Stein, and the Kamensky and Arnstein firms negligently carried out their responsibilities as his bankruptcy counsel. Specifically, they failed to exercise "proper supervision" over the preparation of his petition and schedules; failed to identify and schedule assets that Holstein was alleged to have transferred; failed to raise a timely objection to Goldberg's claim; failed to amend the petition and schedules after the circuit court's decision in the turnover proceeding; and failed to notify Holstein that they had moved to another firm and were no longer representing him.

As a consequence of this negligence, Holstein alleges, he was denied a discharge, resulting in "financial, professional and personal injuries" he terms "horrendous." Not the least of these injuries, he says, is "the collection of a $780,000 judgment" (presumably the Bank's judgment plus post-judgment interest) against him. In addition, the denial of his discharge received front-page treatment in a local legal publication, the Chicago Daily Law Bulletin. As a result, Holstein alleges, he has "been under psychiatric care for emotional distress."

### 3. Discussion

■ Holstein's malpractice claim is not property of his bankruptcy estate. Property of the estate is gauged "as of the commencement of the case." 11 U.S.C. § 541(a)(1). As of the commencement of the case, Holstein's claim had not yet accrued under Illinois law, a point Knopfler

does not contest. Knopfler attempts to pull the unaccrued claim into the estate nonetheless based on *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), but the attempt is not persuasive.

### a. Summary Judgment Standard

The summary judgment standard is familiar. Under Rule 56(c), summary judgment may be entered if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (made applicable by Fed. R. Bankr.P. 7056); *Estate of Allen v. City of Rockford,* 349 F.3d 1015, 1019 (7th Cir.2003). On a motion for summary judgment, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003) (internal quotation omitted).

This standard applies equally to cross-motions for summary judgment. *See Allen v. City of Chicago,* 351 F.3d 306, 311 (7th Cir.2003). When the parties file cross-motions on stipulated facts, however, part of the standard drops away. The court no longer has to decide whether any genuine issue of material fact requires a trial; by stipulating to the facts, the parties have waived their right to trial. *See Market St. Assocs. Ltd. P'ship v. Frey,* 941 F.2d 588, 590 (7th Cir.1991). The question becomes simply which party is entitled to judgment as a matter of law.[3] *E.E.O.C. v. Switching Sys. Div. of Rockwell Int'l Corp.,* 783 F.Supp. 369, 371 (N.D.Ill.1992).

### b. Property of the Estate

■ Holstein is entitled to judgment here. The filing of a bankruptcy petition creates an estate consisting of the debtor's property. 11 U.S.C. § 541(a). The Bankruptcy Code's definition of property is "broad," *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), encompassing "all legal or equitable interests of the debtor in property," 11 U.S.C. § 541(a)(1). Under this definition, "virtually all property of the debtor" becomes property of the bankruptcy estate. *In re Yonikus,* 996 F.2d 866, 869 (7th Cir.1993). Included are claims and causes of action belonging to the debtor. *Whiting Pools,* 462 U.S. at 205 n. 9, 103 S.Ct. 2309; *Polis v. Getaways, Inc. (In re Polis),* 217 F.3d 899, 901 (7th Cir.2000); *Cable v. Ivy Tech State Coll.,* 200 F.3d 467, 472–73 (7th Cir.1999).

■ But although federal law determines when a debtor's interest in property is property of the estate under section 541, whether a debtor has an interest in the first place depends on state law. "Property interests are created and defined by state law," and in the bankruptcy laws "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Unless some federal interest dictates otherwise, state law determines a debtor's property interests in bankruptcy. *Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *Butner,* 440 U.S. at 54–56, 99 S.Ct. 914; *In re Krueger,* 192 F.3d

---

**3.** In addition to the parties' joint stipulation of facts, Holstein has submitted his own affidavit. The affidavit addresses the substance of the malpractice complaint and seems to be intended to support the complaint's allegations. The question here, however, is who owns the malpractice claim, not whether the

claim has merit. *See, e.g., Alipour v. Thomas (In re Alipour),* 252 B.R. 230, 235 (Bankr. M.D.Fla.2000) (noting that decision about whether legal malpractice claim was property of the estate "in no way" amounted to a decision on the merits of the claim). Holstein's affidavit will therefore be disregarded.

733, 737 (7th Cir.1999); *Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir.1998).

■ Even when state law recognizes an interest in property, moreover, section 541(a)(1) places a temporal limit on the interests that become part of the debtor's estate. The estate includes only those legal or equitable interests the debtor has "as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir.1996); *Yonikus*, 996 F.2d at 869; *In re Taronji*, 174 B.R. 964, 969 (Bankr.N.D.Ill.1994). Property interests belonging to a chapter 7 debtor when the petition is filed are part of the estate to be administered by the trustee. Subject to exceptions specified in section 541, however, property a debtor acquires post-petition belongs to the debtor. *See Sender v. Buchanan (In re Hedged–Invs. Assocs., Inc.)*, 84 F.3d 1281, 1285 (10th Cir.1996).

■ This is as true for causes of action as it is for cars or televisions. A cause of action that has accrued as of the commencement of the case is estate property; only the trustee may pursue it. *Polis*, 217 F.3d at 902; *Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Prods. Co.)*, 102 F.3d 223, 225 (6th Cir. 1996). A cause of action that accrues only after the case is commenced, on the other hand, is the debtor's to pursue for his own benefit. *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1043–44 (11th Cir.2004); *Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113, 116–17 (D.N.J.1998); *Swift v. Seidler (In re Swift)*, 198 B.R. 927, 930–32 (Bankr. W.D.Tex.1996). Put simply, "[p]re-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not." *Witko*, 374 F.3d at 1042.

These principles frame the question here: under applicable state law—in this case Illinois law—had Holstein's legal malpractice claim accrued as of June 19, 2000, when he filed his petition? If it had, the claim belongs to the estate. If it had not, the claim belongs to Holstein. *See Witko*, 374 F.3d at 1043–44; *Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218, 224 (5th Cir.2001); *Swift*, 198 B.R. at 930.

■ It had not. A cause of action for legal malpractice in Illinois has three elements: an attorney-client relationship giving rise to a duty of care, a breach of that duty, and actual damages or injury proximately resulting from the breach. *Sorenson v. Law Offices of Theodore Poehlmann*, 327 Ill.App.3d 706, 707, 262 Ill.Dec. 110, 764 N.E.2d 1227, 1229 (2nd Dist.2002). Of these, injury is "an essential element of the cause of action." *Id.* If there has been no injury, there has been no malpractice. *Ignarski v. Norbut*, 271 Ill.App.3d 522, 525, 207 Ill.Dec. 829, 648 N.E.2d 285, 288 (1st Dist.1995). Bad advice without some adverse consequence, after all, is just bad advice. *See Lucey v. Law Offices of Pretzel & Stouffer*, 301 Ill.App.3d 349, 353, 234 Ill.Dec. 612, 703 N.E.2d 473, 477 (1st Dist. 1998) (noting that cause of action did not arise "when the allegedly negligent advice was first given"). Until a loss occurs, then, "no cause of action has accrued." [4]

---

**4.** This is no more than an application of the general Illinois tort rule that a cause of action "accrues only when *all* elements are present: duty, breach and resulting injury or damage." *West Am. Ins. Co. v. Sal E. Lobianco & Son Co.*, 69 Ill.2d 126, 129–30, 12 Ill.Dec. 893, 370 N.E.2d 804, 806 (1977) (emphasis added). "The cause of action does not come into existence until someone has been injured or damaged." *Id.; see also Doe v. Montessori Sch.*, 287 Ill.App.3d 289, 297, 223 Ill.Dec. 74, 678 N.E.2d 1082, 1089 (2nd Dist.1997) (stating that "[w]ithout accrual there can be no cause of action, and there is no cause of action until injury or damage has occurred"); *Wolf v. Bueser*, 279 Ill.App.3d 217, 227, 215

*Sorenson,* 327 Ill.App.3d at 707, 262 Ill. Dec. 110, 764 N.E.2d at 1229; *Brite Lights, Inc. v. Gooch,* 305 Ill.App.3d 322, 325, 238 Ill.Dec. 909, 713 N.E.2d 155, 157 (2nd Dist.1999); *Lucey,* 301 Ill.App.3d at 353, 234 Ill.Dec. 612, 703 N.E.2d at 477.

▆▆▆ Holstein had suffered no loss as of June 19, 2000, when he filed his petition. The loss that forms the basis of Holstein's malpractice complaint (in fact, the only loss the complaint mentions) is the "financial, professional and personal" loss resulting from the denial of his discharge. The discharge, however, was necessarily denied post-petition. Indeed, it was not denied until September 24, 2003, more than three years after the bankruptcy began. Holstein's cause of action therefore could not have accrued before that date. Until his discharge was actually denied, Holstein's injury was merely a possibility: there was still a chance he would defeat the Goldberg adversary. The "mere possibility" of harm does not give rise to a legal malpractice claim in Illinois. *See Lucey,* 301 Ill.App.3d at 353, 234 Ill.Dec. 612, 703 N.E.2d at 477. Because Holstein's cause of action had not accrued at the time his bankruptcy case commenced, it is not property of the estate.

Courts elsewhere have employed this analysis to reach similar results. In *Witko,* for example, the court found that the debtor's legal malpractice claim arising out of his divorce case was not property of his bankruptcy estate. Florida law makes loss an element of a malpractice claim, and the adverse decision in the divorce action was issued over four months after the bankruptcy petition was filed. *Witko,* 374 F.3d at 1044. The court accordingly concluded that when the debtor "filed his bankruptcy petition he had not yet suffered any harm." *Id.* His malpractice action "was unknown, not even rising to a hope." *Id.* Because the cause of action "did not exist at the time he filed his bankruptcy petition," the court said, it was not property of the estate. *Id.*

In *Swift,* similarly, the debtor alleged that as a result of legal malpractice his discharge in bankruptcy was denied and the exemption he claimed for his IRA was disallowed. *Swift,* 198 B.R. at 929. Texas law requires injury as an element of a legal malpractice action but recognizes a "legal injury" consisting of a "concrete and specific risk to an economic interest." *Id.* at 930–31 (internal quotation omitted). Although the allegedly negligent actions of counsel were taken pre-petition, the objection to the exemption was only raised post-petition. *Id.* at 931–32. Therefore, the court concluded, "[i]t was not until after the filing that a concrete and specific risk to the Debtor's interests emerged." *Id.* The court accordingly held the malpractice claim not to be property of the estate.[5] *Id.*

There are other decisions to the same effect. *See, e.g., Saunders v. United States (In re Saunders),* Nos. 94–23489, 95–475, 2003 WL 23239155, at *8 (Bankr. S.D.Fla. Dec. 10, 2003) (holding malpractice claim arising out of advice concerning IRA was not property of estate where "redressable harm" occurred post-peti-

---

Ill.Dec. 800, 664 N.E.2d 197, 204 (1st Dist. 1996) *(same).*

**5.** Finding this was not "the end of the story," *Swift,* 198 B.R. at 932, the court in *Swift* went on to conclude that property of the estate did not include the plaintiff's prepetition contingent or inchoate malpractice claim. The court reasoned that "[s]ection 541(a)(1) reaches no further than property interests recognizable under state law," *id.* at 936, and that "state law does not recognize as a legitimate interest in property an inchoate interest in a cause of action that is yet to accrue," *id.* at 935. "To put it simply," the court said, "a cause of action is either in existence or it is not." *Id.* at 937.

tion); *Collins v. Federal Land Bank of Omaha*, 421 N.W.2d 136, 139–40 (Iowa 1988) (finding malpractice claim concerning prepetition advice to file chapter 7 rather than chapter 11 was not property of the estate since there was no injury until after the petition was filed); *cf. Segerstrom*, 247 F.3d at 223–224 (holding malpractice claim was property of the estate where claim alleged counsel's conflict of interest in a personal injury case that ended before the bankruptcy); *Allen v. Moore (In re Allen)*, 179 B.R. 818, 821 (Bankr. E.D.Tex.1995) (deeming malpractice claim property of the estate where negligent advice and resulting injury all occurred prepetition).

Before his discharge was denied, Holstein's cause of action for legal malpractice was "unknown, not even rising to a hope." *Witko*, 374 F.3d at 1044. Only upon the denial did he suffer any injury, and so under state law that was the earliest his cause of action could have accrued. Because Holstein sustained the injury after his petition was filed, the resulting cause of action was not an interest he held "as of the commencement of the case." 11 U.S.C. § 541(a)(1). The cause of action is not property of the estate.

### c. *Segal v. Rochelle*

Knopfler has no quarrel with any of this except the conclusion. He does not deny that Illinois law governs. He does not deny that a legal malpractice action in Illinois accrues only upon injury or loss. He does not deny that Holstein's cause of action accrued at the earliest more than three years after the petition was filed. Instead, Knopfler contends that the accrual date is irrelevant. Under *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), he says, even a cause of action accruing after the commencement of the bankruptcy may be property of the estate if it is "sufficiently rooted in the

pre-bankruptcy past." *Id.* at 380, 86 S.Ct. 511. And because Holstein alleges negligent legal representation even before the petition was filed, the malpractice claim is indeed "rooted in the pre-bankruptcy past."

This theory has gained some acceptance. Citing *Segal*, several courts have found a cause of action to be estate property although it had not accrued when the petition was filed. *See, e.g., Field v. Transcontinental Ins. Co.*, 219 B.R. 115, 119 & n. 7 (E.D.Va.1998); *In re Richards*, 249 B.R. 859, 861 (Bankr.E.D.Mich.2000). At least one court has reached this result with a debtor's legal malpractice claim. *See, e.g., In re Tomaiolo*, 205 B.R. 10, 14–15 (Bankr.D.Mass.1997). Still other courts agree that under *Segal* a claim is property of the estate, regardless of when it accrues, if the claim is adequately linked to "the pre-bankruptcy past." *See, e.g., Charts v. Nationwide Mut. Ins. Co.*, 300 B.R. 552, 557–58 (D.Conn.2003); *Edwards v. Wyatt*, 266 B.R. 64, 69–70 (E.D.Pa.2001); *Casey v. Grasso (In re Riccitelli)*, Nos. 02–10032, 04–1300, 2005 WL 388553, at *4–5 (Bankr.D.Mass. Feb. 7, 2005); *In re Durrett*, 187 B.R. 413, 417 (Bankr.D.N.H.1995).

These courts misread *Segal*. The debtor partnership in *Segal* filed its petition in September 1961. *Segal*, 382 U.S. at 376, 86 S.Ct. 511. At the end of 1961, the partnership sought and received tax refunds by carrying back pre-petition 1961 losses to 1959 and 1960. *Id.* Although the refunds were obtained post-petition, the Court deemed them property of the estate under section 70a(5) of the former Bankruptcy Act. The Court noted that the refunds were obtained post-petition only because the tax laws did not permit the partnership to seek them until the 1961 tax year had closed. *Id.* at 377–78, 86 S.Ct. 511. Meanwhile, the Court observed, "two key elements" necessary for a refund "ex-

isted at the time these bankruptcy petitions were filed: taxes had been paid on net income within the past three years, and the year of bankruptcy at that point exhibited a net operating loss." *Id.* at 380, 86 S.Ct. 511. With only the passage of time necessary post-petition for the debtor to claim the tax refunds, the Court found the refunds "sufficiently rooted in the pre-bankruptcy past" to be considered "property" under section 70a(5). *Id.*

*Segal,* then, does not expand estate property to include legal or equitable interests a debtor acquires post-petition, as long as a clever trustee can tie those interests to the "pre-bankruptcy past." The debtor in *Segal* had an interest under applicable law when the case began: "The bankrupts in this case had both prior net income and a net loss when their petitions were filed and apparently would have deserved an immediate refund had their tax year terminated on that date." *Id.* at 381, 86 S.Ct. 511. Enjoyment of that interest may have been postponed, but the debtor "possessed an existing interest at the time of filing" all the same. *Drewes v. Vote (In re Vote),* 276 F.3d 1024, 1026 (8th Cir.2002) (discussing *Segal); see also Witko,* 374 F.3d at 1043 (same); *Hoseman v. Weinschneider,* 277 B.R. 894, 899 (N.D.Ill. 2002) (noting that to trigger *Segal,* "[t]he debtor must actually have had some sort of pre-petition rights"), *aff'd on other grounds,* 322 F.3d 468 (7th Cir.2003).

The broader reading some courts have given *Segal* is not consistent with *Butner* or with the plain language of section 541(a)(1). Under *Butner* (and a host of other decisions, some cited above), a debtor's property interests in bankruptcy are established by state law. *See Butner,* 440 U.S. at 54–55, 99 S.Ct. 914. Under section 541(a)(1), those interests become property of the estate only if they exist "as of the commencement of the case." 11 U.S.C.

§ 541(a)(1). Reading *Segal* to include in the bankruptcy estate, not just causes of action a debtor has when the case commences, but also causes of action accruing post-petition if they are "sufficiently rooted in the pre-bankruptcy past," gives courts two alternatives: disregard the clear temporal line drawn in section 541(a)(1), or ignore state law establishing the causes of action in question. *See, e.g., Casey,* 2005 WL 388553, at *5 (mistakenly asserting that the analysis "does not turn on whether, under state law, the claim had accrued as of the petition date"). Neither alternative is acceptable.

Because the cause of action for legal malpractice that Holstein asserts did not exist under Illinois law as of the commencement of his bankruptcy case on June 19, 2000, the cause of action is not property of the estate.

## 4. Conclusion

The motion of Robert A. Holstein for summary judgment on the request for declaratory judgment in Count I of his complaint is granted. The court finds and declares that the legal malpractice claim asserted in *Robert A. Holstein v. Barry A. Chatz, et al.,* No. 04 L 5271 (Cir. Ct. of Cook County, Ill.), is not property of Robert A. Holstein's bankruptcy estate. The motion of Alexander S. Knopfler for summary judgment on Count I is denied. All remaining counts of the complaint are dismissed as moot. A separate Rule 9021 judgment will be entered in accordance with this opinion.